Christian, J.
The original bill in this case was filed by the judgment creditors of James B. Hurt, for the purpose of vacating an alleged fraudulent deed by which he conveyed a certain tract of land to his son John B. Hurt. The evidence conclusively proved that the said deed was fraudulent. It was so declared by the circuit court, and from its decree, in that respect, there is no appeal. So that much of the voluminous evidence in this record need not be considered by this court.
*720 The main controversy we have to determine arises between the judgment creditors of Jas. B. Hurt, and the appellee, Repass, and is a question of priority of liens between them, upon the land directed to be sold by the decree of the circuit court; Repass claiming a vendor’s lien as superior to the liens acquired by the judgment creditors. This land had been purchased by Repass in the year 1859, and conveyed by him to Stuart, trustee, to secure the purchase money. After-wards, Repass becoming embarrassed, filed his petition in bankruptcy, and was, upon regular proceedings, adjudicated a bankrupt, and Holbrook was appointed his assignee. In 1869, the land was sold by the assignee, with the assent of the trustee. At this sale, Repass became the purchaser, at the sum of $4,600, of which sum $875 was to be paid in cash. The cash payment, except the sum of $74.83, was paid; but Repass being in default to this extent, and also in default, as Stuart claimed, as to the bonds which were to be given for the deferred payments, Stuart, the trustee, again advertised and sold the land to Hounshell. Repass, after this sale, being still in possession of the land, refused to deliver possession to Hounshell, and filed his bill in equity in the circuit court of "Wythe, in which he tendered the balance of the cash payment, with certain bonds, which he claimed were sufficient to meet the deferred payments, and praying for specific performance and confirmation of the sale made to'him, by his assignee and Stuart, and for an injunction of all proceedings under the sale to Hounshell.
Pending this suit, Repass being still in possession, made a contract for the sale of this land to James B. Hurt, which was reduced to writing, but which was never recorded. In that contract of sale, it was stipu *721 lated that Repass should retain a lien upon the land for the security of the purchase money.
While Hounshell was claiming the land under purchase from Stuart, and Repass was insisting upon the specific execution of his contract of sale made by r J the assignee in bankruptcy, with the assent of the trustee an adjustment of their conflicting claims was made, by which Hounshell and Repass both united in a deed conveying the land to Hurt; Stuart agreeing to accept the bonds of Hurt for the deferred payments, due from Repass. In this deed there is an interlineation in these words, “A lien is hereby reserved by said Repass to secure the performance of said Hurt’s contract with him herein referred to.” It is contended by the appellants, that this interlineation was not made before the delivery of this deed. Much conflicting evidence is contained in the record on this point; but I think the decided preponderance of this testimony is in favor of the fact, that the interlineation was made before signing and delivery of the deed. The evidence to sustain this fact is the more conclusive, because it is entirely consistent with the manifest intention of the parties as evidenced by their written contract of sale for the same land, which expressly reserved the vendor’s lien. It is not reasonable to suppose that Repass, after making such a contract with Hurt, should have failed to retain the same lien when he came to convey the legal title. Hor is it a reasonable conjecture that Hurt, who had in terms contracted that the purchase money should be secured by a vendor’s lien, should afterwards have refused to accept the deed, because it contained the provisions retaining the lien for which he had already solemnly stipulated.
The testimony of Repass, supported as it is by that *722 0f his attorney, Caldwell, and by all the circumstances of the case, I think is conclusive to shew, that the from Repass and Hounshell, retaining the vendor’s lien (by interlineation), was delivered to Hurt and accepted by him. But whether it was or not, is really not material to the decision of the controversy between the judgment creditors of Hurt and Repass. If the deed retaining the vendor’s lien was in fact never delivered by Iiepass and accepted by Hurt, the rights of the parties are then to be fixed by the contract of sale. If the deed be treated as a nullity, because of non-delivery and non-acceptance, still, the contract of sale remains of binding force, and that contract in terms reserves a lien upon the land as security for the purchase money.
The question we have to determine is, whether the judgment creditors of Hurt have acquired by their judgment, a superior lien to that of Repass, retained as a vendor’s lieu in the contract of sale referred to. It is true this contract of sale was never recorded. But the question is not to be determined by the provisions of the registry acts. It must depend upon principles outside of and independent of those acts. Whether the contract of sale was recorded or not, can make no difference. The lien of the judgment creditor operates only on the estate which belongs to the debtor.
The title of Hurt to this land, sought to be subjected to the judgments in this case, was subordinate to the lien of Repass, reserved in the contract of sale. Hurt could not have compelled a conveyance of the legal title to him, except upon condition that the balance of the purchase money, for which the land was security, was first paid. A judgment can confer upon the creditor no greater or better estate than the debtor *723 had. Whatever the debtor owns (except that which is exempted by statute),- is subject to the- lien of the .judgment creditor; but the lien cannot cover that the debtor does not own. As was said by Judge Staples, in Floyd, trustee v. Harding, (not yet reported), supra 401, “It has been over and over decided, that the judgment creditor can acquire no better right to the estate than the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist at the time, in favor of third parties, and a court of chancery will limit the lien of the judgment to the actual interest which the debtor has in the estate. The creditor is in no sense a purchaser—he has no equity whatever beyond what justly belongs to his debtor—his claim is to subject to his lien, such estate as the former owns, and no more. These principles have been time and again announced by the courts of England—by this court, and by the supreme court of the United States, and by the courts of many other states of the Union.” See cases cited by Judge Baldwin, in Withers v. Carter, 4 Gratt. 407, and cases cited by Judge Staples, in Floyd, trustee v. Harding, supra 401. In a still more recent case, Borst v. Nalle, supra 423, decided at the late Richmond term, Judge Buries, delivering the unanimous opinion of this court, says: “Authorities might be multiplied without number to show that where statute enactments do not interfere, one creditor can never get by his judgment more than his debtor, actually owns, and to this he will be, as he should be, confined by courts of equity.” See the numerous cases cited by Judge Buries in that case.
The principles settled by these cases must control and govern the ease at bar. I am, therefore, of opinion. *724 that the decree of the circuit court, declaring that the vendor’s lien, reserved by Repass, is superior and para-to the lien of the judgment creditors, is not erroneous, and that in this respect the same be affirmed.
Another important and interesting question arises in this case, which is not so free from doubt as the question we have been considering, and upon which there is some conflict of authority in other states. It is a question of first impression in this state.
On the 13th May 1872, James B. Hurt, four months after he had conveyed the land in controversy to his son, John B. Hurt, filed and put on record his homestead deed, in which he claimed as part of his homestead $1,000 of the purchase money alleged to be due from his son for said land. This deed having been declared fraudulent and void as to creditors, the question we have to determine is, “Whether James B. Hurt can now claim against his creditors a homestead in this land, or rather (which is the same thing) in the purchase money which represents the land.” It has been seen that the deed from James B. Hurt to his son was set aside by the circuit court as fraudulent and void as to the creditors of said James B. Hurt. From this decree there was no appeal. The effect of that decree was to set aside and vacate the deed as to the creditors of James B. Hurt, but as between the grantor and grantee it was a good and valid deed. Both the grantor and grantee in this case say, in their sworn answers, that the deed was bona fide, and made upon full consideration. Whether that was true or not, the title to the land passed out of James B. Hurt. It was gone from him forever. The title was then in John B. Hurt, subject to the satisfaction of the claims of the creditors of James B. Hurt. The land itself, and of *725 •course the proceeds of its sale, belonged to the creditors. If anything was left after satisfying the claims of James B. Hurt’s creditors, that surplus was the property of John B. Hurt, the alleged vendee. In this James B. Hurt could not claim his homestead, for 7 that would be to claim a homestead in the property of another. A fortiori if the land was not sufficient, as in this case, to satisfy the claims of creditors, the debtor could not claim his homestead in the proceeds, for that was not his property, but the property of the •creditors, so adjudicated to be by the decree which declared the conveyance to be void as to creditors, and which subjected the land to the payment of their claims. This would seem to be clear on principle. Surely the debtor can only claim his exemption by homestead or otherwise in property which is his own, and not in that which is another’s. The cases are somewhat conflicting as to whether the fraudulent sale •of property deprives the debtor of his exemption.. In Alabama, Mississippi, Minnesota, and perhaps some •other states, it has been held that a fraudulent conveyance is no bar to claim of homestead. In Pennsylvania, New York and Indiana, the contrary doctrine has been held; and I think these latter decisions are based on principle, founded on a sound morality, and more in accordance with the spirit and intention of the exemption laws.
In Indiana it is held, that where a person conveys property, whether the sale is fraudulent or not, the grantor must be regarded as having no title—none against his grantee; and as against his creditors he can have no right if the sale is fraudulent. See Smyth on Homstead, section 557. Mandlove v. Burton, 1 Ind. R. 3. In this case the court says: “If he (the debtor and grantor) conveyed the property, though fraudu *726 lently, this conveyance' divested him' of all interest in it. If the grantee was privy to the fraud, his title is-void as against the creditors of the grantor. If he-was n°t privy to the fraud, and obtained the property for an adequate consideration, he will hold it against the grantor and his creditors., In either event, however, the question must arise between the grantor and those creditors. In no case can a man avail himself of his own fraud.”
In New York the rule adopted is to the same effect. Whenever there is a fraudulent conveyance or concealment of property in order to defraud his creditors,, the debtor will be placed beyond the reach of the-statute. Brackett v. Watkins, 21 Wend. R. 68.
In Pennsylvania the rule has been uniform from its earliest decisions, under the law of 1849, to the present time, that if a debtor has fraudulently conveyed or concealed his property from his creditors, it will bar him of all claim to exemption. McCarthy’s appeal, 68 Penn. St. R. 217; 38 Ib. 190; 51 Ib. 90, and other cases cited in Smyth on Homestead, § 552, page 899.
Whatever eases there may be (and certainly some may be found in other states) in conflict with these decisions, I prefer to follow them, because they are not only founded upon sound principles of law, but are based upon those sound principles of morality and equity which declare that in no case can a man avail himself of his own fraud.
It would seem strange, indeed, and to my mind, not to be tolerated for a moment, that a party who commits a fraud is to be placed, by a court of equity, in a better position than if his transactions with his creditors had been fair and bona fide.
Suppose that James B. Hurt had conveyed this land *727 to a trustee for the benefit of these very judgment creditors, could there be a question in the mind of any one, that he could ever claim a homestead on' land thus dedicated to his creditors, and the title to which had passed out of him forever? Suppose he had made a deed of gift of the land to his son, not being indebted. In both of these cases it will be conceded that his right of homestead was gone forever. But it is said, while this is conceded, that if he conveyed the same land for the purpose of perpetrating a fraud, he may have his homestead in it, or its proceeds.
How, the deed which was vacated and annulled by the circuit court was still good between the parties. The title was in John B. Hurt, and had passed from James B. Hurt forever. John B. Hurt would be regarded in a court, of equity as a trustee holding the legal title for the benefit of the creditors of James B. Hurt. The court would say to him, “The land is yours when you pay off the liens of the judgment creditors, and not till then.” But all title to the land and its proceeds is as completely gone out of James B. Hurt as if he had conveyed the same in trust for the benefit of his creditors. He cannot claim a homestead in it, or its proceeds, because neither are any longer his property.
It is further urged that the homestead is for the benefit of the family of the party claiming it, and for this reason, and by express enactment, the court is required to give all our homestead laws a liberal construction. Admit it; but surely, the claimant must confine his claim of homestead to that which belongs to him; and the utmost stretch of liberality and latitudinous construction can never vest him with rights in property which belongs to another.
■ But there is another view of the question which, as *728 far as the judgment creditors are concerned, would seem to be conclusive. James B. Hurt claims his homestead in part in two bonds of five hundred dollars each, executed and delivered to him by his son, B. Hurt. These bonds are nominally secured by a vendor’s lien on the land conveyed by James B. Hurt. This deed is set aside as fraudulent and void. Of course, then, the vendor’s lien contained in said void deed, is no lien at all. That is swept away, and is as if it never existed.' Then it follows that James B. Hurt is entitled, as he claimed, to a homestead on the lands of John B. Hurt without the security of a lien upon the land, that security being contained in a deed declared fraudulent and void. How there is no objection to this claim of homestead in the notes of his son, John B. Hurt; with that the creditors have nothing to do. They are only affected by the lien retained in the deed, and that deed is declared void. Being void, there is no lien. So that the claim of homestead, in the bonds of John B. Hurt, can stand without affecting the rights'of creditors.
I am therefore of opinion, that so much of the decree of the circuit court of Wythe as declares that John B. Hurt is entitled to his claim of homestead exemption in the proceeds of the land which he fraudulently conveyed to his son, John B. Hurt, be reversed and annulled, and that the said decree, in all other respects, be affirmed.
But on this question of the right to claim a homestead, the majority of the court differ with, me, and are of opinion that James B. Hurt has a right to claim his homestead in the proceeds of the land decreed to be sold by the circuit court, as against the creditors of James B. Hurt. The result, therefore, is that the decree must, in all respects, be affirmed.
*729 Staples, J.
The only point of difference between Judge Christian and myself, in the present case, is in regard to the claim of homestead. He maintains that where a debtor has made a fraudulent conveyance of his property he is estopped to claim a homstead in such property after the conveyance has been annulled •as fraudulent and void as to creditors. I do not concur in this view, and will briefly state the reasons. This question is one of the first impression in this state. In other states it has been often considered and decided. In New York, Pennsylvania and Indiana, it is held that a fraudulent conveyance by the debtor will bar him of all claim to the homestead exemption, while in other states the contrary doctrine is maintained. In Smyth on Homestead and Exemption, section 469, it is said, “The general rule seems to be, the fraudulent conveyance of the homestead by a bankrupt does not estop him from claiming such homestead in the premises after the conveyance has been annulled and decreed as fraudulent and void as to creditors.” In support of this position the author cites a number of cases decided in the United States courts. See also note, section 238, of the same work.
In the case of Sears et als. v. Hanks et als., 14 Ohio State R. 298, which seems to have been a well considered case, the court says: The rights of the plaintiff in this'action are only those which belong to creditors seeking to set aside a voluntary conveyance of their debtor made in fraud of their rights, and to enforce their judgment liens against the property so conveyed. Their claim is not under or through the fraudulent conveyance, but adverse to it; and when at their suit it has been set aside and declared wholly void as against them, they cannot be allowed as creditors to •set up this void conveyance against which they are *730 claiming, for the purpose of enlarging their rights or-remedies against their debtor, or for the purpose of estopping him from the assertion of the rights which ^e would otherwise have as against them. As between creditor and debtor the deed is simply void, and r J 7 cannot therefore affect the rights of either.
In Crummer v. Bennet et al., 68 North Carolina R. 494, Chief Justice Pearson, delivering the opinion of the court, said: “The creditor treats the conveyance by his debtor as void and of no effect. Take that to be so, how can the creditor have any other claim against his debtor than he would have had if the conveyance-had not been made. The only legal consequence of a deed with intent to defraud creditors is, that although valid as between the parties it is void as to creditors. * * As to the homestead the creditor has no concern—that matter will' rest between the fraudulent donor and donee.”
There is another authority which, in my judgment, is entitled to peculiar consideration upon this question. I mean the opinion of Judge Dillon, an able judge, who has given the subject a very careful examination. In Cox v. Wilder, 2 Dillon R. 45, he uses this language: “He (the assignee in bankruptcy) claims that the deed is void as to creditors; and on this ground alone he-attacks it, and upon this ground alone has he any right to the property. He says it is void as to creditors because fraudulent; and for this reason asks to be invested with the title which is fraudulently conveyed. He cannot claim under it, and must claim against it. When it is decreed to be fraudulent and void at his-instance, how can it be set up to defeat the right claimed. Such a position involves this inconsistency, that it asks that the same instrument be held void as to creditors, and then in their favor held valid. * * * *731 This view does not make the estate any less than if the fraudulent conveyance had not been made, while the opposite view gives the creditor a profit out of attempted fraud at the expense of the family, for whose benefit the exemption is mainly, if not wholly, provided.” Ho one can deny that there is great force in the observations of the learned judge. The same view is taken in the states of Alabama and Mississippi: In Vogler v. Montgomery, reported in 13 Am. Law Reg., N. S., 244; McFarland v. Goodman, 13 Am. Law Reg., 697; In Re Detert, reported 14 Am. Law Reg., page 166, and in other cases cited in Smyth on Homestead.
One of the grounds taken against the doctrine of these cases is, that while the deed is null and void as to creditors, it is valid between the parties. The debtor having by the deed conveyed his eutire interest has nothing upon which his claim of homestead can operate.
It must be borne in mind, however, this is a controversy between the creditors on the one hand, and the debtor and fraudulent alienee on the other. What are the rights of the former in such a controversy?
Simply to have the deed annulled; to be placed precisely in the same position they occupied before. Can they claim more. If the debtor has a valid claim to the homestead as against them, before the execution of the deed, how is their condition improved by the deed? Their judgments are only a lien upon the property of the debtor. Tt is not competent for them, while selling that property, to insist it is not the debtor’s property. The validity of the fraudulent conveyance as between the parties is no concern of the creditors. All that they can claim is, that as against them it can confer no rights upon anyone. If anyone *732 can set up the estoppel it would seem to be the fraudulent grantee. But in this case he asserts no such claim. But the creditors, through him, seek to approPriate that the law does not allow them, nor the deed confer upon them. If the debtor makes a fraudulent conveyance of property in which he has a right of homestead' under the constitution, what is it to the creditors, so far as the homestead is concerned. The injury to them is in the fraudulent conveyance of that to which there is no claim of homestead. When the conveyance is annulled, and they are restored to their ’own, they have obtained all that they can justly claim. They cannot be heard in one breath to say that the conveyance is a nullity as to them, and in the next to assert it confers upon them new rights because it is valid between the parties.
Much was said in the course of the argument with respect to the policy of denying the benefit of the homestead exemption to a shuffling and dishonest debtor, who attempts to defeat the just claims of creditors by a fraudulent alienation of his property. It must be remembered that the law does not confine its remedial action to such conveyances as are tainted with actual fraud. Fraud in law, constructive fraud, when there is no mala Jides, is also a ground for the annulment of conveyances at the suit of creditors. If the deed is voluntary, or if it be upon insufficient consideration, it is fraudulent and void as to creditors, however fair may be the motives of the grantor. The books are full of cases in which such deeds have been vacated without the slightest imputation of actual fraud or bad faith in either of the parties. The grantor, often supposing himself to be possessed of adequate means to pay all his debts, does precisely what the homestead law attempts to do—makes provision *733 for his family. It turns out that his remaining estate, from, unforeseen causes, is inadequate to meet the demands of creditors; and the deed is declared to be fraudulent and void—not fraudulent in fact, but in law. Does the debtor forfeit all claim to the homestead exemption, because he has innocently attempted to secure his family against want? I imagine not. The court is dealing in that case, not with a dishonest debtor, but with an unfortunate one. And the argument founded on the supposed public policy fails. The result of such reasoning is, that in every case the courts will be called upon to enquire into the motives of the debtor in making the conveyance; and if they are found to be fraudulent, a different effect will be given to the conveyance from what it would have when the motive is an honest one. And thus a deed, which, it is conceded, vests no title in the creditor, is to be construed as conferring upon him rights, or not, according to the motive with which it was executed.
It is a sufficient answer to all this, that the right to the homestead rests upon no such technical and unsatisfactory distinctions. The constitution does not recognize them. This argument, founded on the policy of punishing the debtor for an attempted fraud, finds no support or countenance in that instrument. If the comfort and protection of the debtor, were alone involved, there might be some force in the argument. But no one can look into the provision of our constitution and the adjudicated cases of other states, and fail to see that the primary object is to provide for the family. As was said by the supreme court of Ohio in Sears v. Hanks, 14 Ohio R. 498, 501, “the humane policy of the homestead act seeks not the protection of the debtor; but its object is to protect his family from the inhumanity which would deprive *734 dependent members of a borne. And in aid of this wise and humane policy the whole act should receive as liberal a construction as can be fairly given to it- Ve think its provisions protect the debtor’s family 88 a9a^nsi his creditor in the actual enjoyment of a homestead, irrespective of the title or tenure by which it is held.” See Smyth on Homestead and Exemption, section 532. In the constitution and laws of all the states, and in the decisions of all the courts, the idea is kept prominently in view, that the great purpose of the homestead exemption is not merely the benefit of the husband or parent, but the maintenance and security of the family against the imprudence, mismanagement and neglect of the former. Smyth on Homestead and Exemption, sections 1 to 14, inclusive. In the language of Judge Dillon, “if the law gave to a single man the right to his exemption, it would accord to the natural desire to punish fraud to visit a penalty upon him; but to announce a forfeiture upon him, where there is a family, subverts the policy on which the exemption is provided and allowed.
Upon these grounds, my opinion is, that when there is a fraudulent conveyance of property, which is subsequently annulled at the suit of the creditor, the grantor is not estopped as against the creditor to assert his right of homestead in the premises.
It is proper further to say that in the present case there is no satisfactory proof of the existence of actual fraud in the deed which is the subject of controversy. The decree of the circuit court declares that the deed was executed in fraud of the rights of the ■then existing creditors of James B. Hurt, and is therefore void as to them. This, I think, is a distinct intimation of fraud in law, which was sufficient to vacate the conveyance as to existing creditors; and so under *735 standing it, I am satisfied the decree is unquestionably correct. There is however, another reason or element in this ease which distinguishes it from others in there is simply a fraudulent or voluntary conveyance. By the deed which is impeached as fraudulent, John 1 B. Hurt stipulates to pay as the purchase money of the land, the sum of $4,000, payable in instalments of $500 each, except the last, which amounted to $1,500; all bearing twelve per cent. This deed bears date the 13th January, 1872. On the 13th May, 1872, James B. Hurt, the grantor, filed his declaration and deed of homestead, and by it he claimed as exempt, two of the bonds of $500 each given him for the purchase money of the land. At that time none of the judgments in controversy had been recovered, so that there was no lien on the land, and no debt which would prevent the claim of homestead. As already stated, the deed of conveyance is set aside, net on the ground of actual fraud, but because the creditor is delayed by the long credits given to the purchaser. And now it is claimed that the grantor has forfeited his right to a homestead both in land and purchase money. In the land because the deed is valid between him and the grantee, and divests him of all title: In the purchase money, because the deed is set aside. The inconsistency of this position is apparent at a glance. John B. Hurt, the grantee, can only hold the land by paying the purchase money. So soon as the court divested him of the title, he was released from his obligation to pay. The consideration upon which that obligation was founded has failed. How then can he claim the land as against James B. Hurt. He has no longer the shadow of a title. The decree of the court vacates the purchase effectually, and restores all the parties to their former position. In this case the argument in *736 favor of the creditor, founded on the supposed validity of the deed between the parties, again fails. As the right to homestead in the purchase money has failed by the action of the creditors, they certainly cannot obieet to the allowance of the homestead in the land. ** For the reasons stated, I am for affirming the decreo of the circuit court in all respects.
All the judges who sat concurred in the opinion of Christian, J., except so much as related to the effect of the deed upon the grantor’s homestead. On that point Moncure, P., concurred in the opinion of Staples, J.
Decree aeeirmed.