Staples, J.
One of the appellants, E. S. Boynton, on the 25th January, 1871, executed a deed conveying a house and lot in the city of Alexandria to a trustee for the sole benefit of his wife, Caroline E. Boynton. At that time the appellant, as a member- of the firm of E. *458 S. Boynton & Co., was-indebted to certain creditors to the amount of five hundred dollars. In August, 1871, these creditors, the appellees here, filed a bill in the coi7poration court of Alexandria to set aside this deed, upon the ground it was intended to hinder and delay creditors, and was not upon consideration deemed valuable in law. The case coming on to be heard at the December term, 1871, that court entered a decree declaring the deed null ■ and void, and setting it aside so far as it affected the claims of the appellees. Thereupon the appellant, E. S. Boynton, filed his application asserting a claim of homestead in the property; but the application was rejected by the court,, and the claim to the homestead denied. From that decree an appeal was allowed by one of the judges of this court.
The question is substantially the-same as that which arose in Shipe, Cloud & Co. v. Repass et als., decided at "Wytheville, and reported in 28 Gratt. 716, 729. It was there held by a majority in a court of three judges that w:hen a conveyance is set aside for fraud at the suit of the grantor’s creditors he is not estopped as against .them to assert his claim of homestead in the property embraced in the .deed. At the time that decision was made, the court had access to but few7 of the authorities bearing upon the question. A reference to the opinion will show the grounds upon wdfich'it was based, and it is not proposed to repeat them here.
Since the present case has been under consideration, I have taken occasion to re-examine the whole subject, and to lotik more fully into the authorities, and I find no reason to do.ubt the correctness of the former decision. In Thompson on Homestead and Exemptions, the most recent work on the subject, the cases are collected, and the question carefully considered on reason and authority. I propose to quote somewhat extensively what he has *459 said as my own argument in the present case. After stating the rule in question, he proceeds as follows:
“The reasons for this rule may be deduced from the cases: first, that the homestead privilege is created for the benefit of the wife and children, as well as that of the husband and father; therefore it is not right that the former should be prejudiced by the wrongful act of the latter; second, that the conveyance being void as to creditors, it stands as to them as though it had never been made. If it had not been made, the debtor (or his wife) could have asserted the right of homestead in the premises against, them, and they, the creditors, cannot assume the inconsistent positions of assei’ting the nullity of the conveyance, and claiming a right under it. In other words, a fraudulent conveyance does not enlarge the rights of creditors, but leaves them to enforce the rights they would have had if no such conveyance bad been made. Expressed in still another way—the interest which the creditor has in the property by virtue of his lien is a derivative interest, proceeding from the debtor and dependent upon his title. Hence the creditor cannot acquire a right under the debtor’s title, and at the same time impeach that title. He cannot sell under his execution the debtor’s title, and at the same time deny the debtor’s right of homestead on the ground that the latter has no title. By attempting the sale the creditor affirms that the debtor has a salable interest, and the law moans that interest should not be taken away and the debtor disturbed in his possession by judicial process. "When the law declares that a debtor’s disposal of his property with intent to defraud his creditors shall be voidable at the instance of his creditor, and at the same time declares that specific property of the debtor shall be exempt as against his creditor’s adverse claims, the provisions are in pari materia, and must be construed together, and the latter provision must be held to except *460 this exempt property from the operation of the former provision. Certainly it would be very inconsistent to say that a debtor’s disposal of his property, and which property, in so far as the creditor and his claims are concerned, may be said to have no existence at all, is a fraud upon the creditor. Ko creditor can be, in legal contemplation, defrauded by a mere conveyance made by his debtor of any of his property which such creditor has no right by law to appropriate, or even to touch by any civil process. A conveyance of the homestead by the husband to the wife cannot be held fraudulent as to creditors, for the reason that being exempt it was no more beyond their reach than before.”
To my mind this reasoning is not only just and sound, but is absolutely unanswerable. There is much more on the same subject in the same work, but the limits of this opinio.n will not justify further citation. It will be seen, however, that one of the reasons given by the author for the rule stated is, that the creditor cannot be said to be hindered, or delayed, or prejudiced by a fraudulent conveyance embracing property subject to the homestead, because the debtor is entitled to hold it exempt from the payment of his debts. A striking illustration of this principle is furnished by the cases respecting property exempt from execution at law. According to the course of English decisions, it was long settled that to make a voluntary conveyance void as to creditors it must transfer property which would be liable to be taken in execution for the payment of debts. The reasoning upon which this doctrine was based was, that the statute of frauds and perjuries was not intended to enlarge the remedies of creditors or to subject any property to execution not already in law or equity subject to the demands of creditors. A voluntary conveyance of property not so subject would not be injurious to them nor within the *461 purview of the statute, because it would not withdraw any fund from the power of the creditor which the law had not already withdrawn from it. And it would he a strange anomaly to declare that to be a fraud upon creditors which in no respect varied their rights or remedies. And hence it has been held that a voluntary settlement of stock or of any other property not liable to execution is valid, whatever may be the condition of the grantor. This is the doctrine held by some of the most eminent judges in England. 1 Story Eq. Pl. §§ 367, 368. It is true that Chancellor Kent and other American jurists have very justly questioned its soundness upon the ground that although property thus conveyed could not be reached at law, equity might interfere and give the necessary relief; for otherwise a debtor might convert all his property into stock, and settle it upon his family, in defiance of the claims of creditors. But neither Chancellor Kent nor any other American judge, in discussing this question, ever maintained that a fraudulent or voluntary conveyance enlarged the rights of the creditor, or that he would be prejudiced by a conveyance of property which is exempt both at law and in equity from the payment of debts. Take, for example, the property exempt from levy and distress under what is known as the poor-debtor’s law. It will scarcely be maintained that if the debtor should make a fraudulent deed conveying this property along with other property subject to his debts he would thereby forfeit his claim, to exemption as against the creditors.
The language of the constitution is equally emphatic with respect to the homestead. It declares that every householder or head of a family shall be entitled, in addition to the articles now exempt from levy or distress for rent, to hold exempt from levy, seizure, sale under execution, order or other process, *462 Ms real and personal property, &c., to the value of not exceeding $2,000, to be selected by him.
It is said, however, that by the express terms of this provision the debtor can only claim the homestead in property which is his own, and not in that which is another’s. The supreme court of Ohio in Sears v. Hanks, 14 Ohio St. R. 298, has given so complete an answer to this question I will content myself with quoting a part of Judge Scott’s opinion in that case: “Although estoppels are mutual, the plaintiffs claim a right, notwithstanding the conveyance, to regard the property as still belonging to the debtor, and at the same time disregarding the decree which they have asked and obtained, to insist that their debtor has no interest whatever in the premises. The debtor is estopped equally from claiming and from disclaiming, while the creditor may do either, and each in turn, as his interest may dictate. Such a position can hardly he maintained. The rights of the plaintiffs in this action are only those which belong to- creditors seeking to set aside a voluntary conveyance of their debtor made in fraud of their rights, and to enforce their judgment liens against the property so conveyed. Their claim is not under or through the fraudulent conveyance, but adverse to it, and when at their suit it has been set aside and declared wholly void as against them, they cannot be allowed as creditors to set up this void conveyance, against which they are claiming, for the purpose of enlarging their rights or remedies against their debtor, or for the purpose of estopping him from the assertion of the rights which he would otherwise have as against them. As between creditor and debtor, the deed is simply void, and cannot, therefore, affect the rights of either. A judgment creditor’s lien is only upon the property of his debtor, and the purchaser at a sale *463 on execution takes in general only the debtor’s title. If the debtor has no title or interest in the property levied on, there is nothing for the creditor to sell, and it is not competent for the creditor while selling the alleged title of his debtor to deny his right to a homestead on the ground that he has no interest in the property about to be sold. If. he has an interest in the homestead property which the creditor can sell, he has an interest enough to secure his homestead from sale. The validity of the fraudulent conveyance as between the parties to it is no concern of the creditor’s when it has been set aside as to him. All he can ask is, that against him it shall confer no rights upon anyone. Were these plaintiffs judgment creditors of the fraudulent grantee, and levying their. execution as such, the case would have been entirely different, and it might then well be said, in response to the present claim of Hanks, the creditor, that one person cannot have a homestead in the property of another.”
I might also quote a very clear and satisfactory argument of Judge Dillon in Cox v. Wilder, 2 Dill. R. 45, 49, and of the supreme court of Wisconsin, 11 Wise. R. p. 114, to the same effect; but the citations already given contain all that is necessary upon this particular point.
All that has been said relates, of course, to a controversy between the debtor and creditor exclusively. The deed being valid between the parties, no claim or assignment of homestead can affect the rights of the fraudulent grantee. Ilut if he raises no objection, if he does not rely upon the estoppel, and the controversy is narrowed to a contention between debtor and creditor, I can see nothing to preclude the former as against the latter from asserting his claim of homestead.
We have heard much of a sound “public policy,” which requires the courts to intervene for the suppression of fraud; all of which is well enough as a guide for *464 judicial discretion when properly understood and defined. But what is “public policy?” As a basis of judicial decision it is wholly unreliable. In The License Cases, 5 Wall. U. S. R. 462, the supreme court of the United' States has said: “ This court can know nothing of the public policy except from the constitution and laws, and the-course of administration and decision. It has no legislative powers. It cannot amend^or modify any legislative acts. It cannot examine questions as expedient or-inexpedient, as politic or impolitic. Considerations of that sort must in general be addressed to the legislature. Questions of policy determined there are concluded, everywhere.”
It is idle to say a man cannot take advantage of his own fraud. How is he taking advantage of his fraud in claiming property not subject to his debts ? How, if the-attempted fraud of the debtor is in all cases to defeat the-homestead, the result will simply be to give to the creditor a profit out of the transaction at the expense of the-family of the debtor, for whose benefit the exception is mainly intended. And it becomes a grave question to-be considered how far “'public policy” requires that the-family of the debtor shall be punished for his misconduct.
But why do we look only to cases of actual fraud ? Instances of constructive fraud are much more numerous, and more frequently the subject of judicial investigation. Many a man, whose actual indebtedness bears but a small proportion to his property, makes a settlement upon his wife or children, and afterwards spends or loses so much, of his estate as not to leave enough to discharge his debts. Ho one doubts that a settlement of this sort may be made with a perfectly honest intent, and yet the law pronounces it fraudulent, and it wdll be set aside at the suit of the creditors. The case of Johnston v. Gill, 27 Gratt. 587, is just such a case. The books abound with others *465 of a similar character, in which there is not a whisper of actual fraud. And yet, according to the reasoning of those who advocate a “ sound public policy,” the settlement defeats the homestead and confers upon the creditor rights he would not have had without the settlement. In this very case there is no reason to suppose any actual fraud was intended. All the circumstances rebut any such conclusion. At the time the deed was executed the indebtedness of the appellant did not exceed $500; there were no liens upon the property, nor have any been since acquired, except such as resulted from the mere filing the bill. If the appellant, instead of conveying the property for the benefit of his wife, had filed his claim of homestead, the result would have been nearly the same, and the transaction would have been entirely legitimate. 33ut it seems that in this particular case the form of the investment stamps the transaction as fraudulent; the wife loses the benefit of the provision made for her, the husband forfeits the homestead, and the creditor acquires title under a deed to a third person, which is a nullity as to him. A course of reasoning which leads to such results must be radically wrong and vicious. It cannot receive the sanction of my support. I know that cases will sometimes occur in which the deed is tainted with actual fraud. If, in such cases, it is deemed advisable to deprive the debtor of the homestead for the benefit of the creditor, the legislature can apply the remedy under such limitations as may be needful and proper. Whatever may be said with respect to the general policy of these homestead provisions, as long as they l’emain it is the duty of the courts to sustain them liberally by the express mandate of the constitution.
In conclusion, I will state that the views here expressed are fully sustained by the decisions of the supreme courts *466 of Mississippi, Alabama, Louisiana, Kentucky, North Carolina, Massachusetts, Maine, Vermont, New Hampshire,Iowa, Michigan, Wisconsin,Texas and Missouri; by the opinion of Judge Dillon in Cox v. Wilder, 2 Dill. 45; and the opinion of Judge Hopkins in McFarland v. Goodman, 6 Bissell R. 111; and by the several authors who have treated the subject. See Smyth on Homestead and Exemptions, § 532; Thompson on Homestead and Exemptions, §§ 406 to 418; and Bump. on Fraudulent Conveyances, p. —, -where all the cases are cited.
There are some opposing decisions, I admit, but they will be found generally to relate to conveyances of chattels as affected by particular statutes of the several states. Thompson, § 425, et sequitur. The case of Brackett v. Watkins, 21 Wend. R. 68, relied upon in the dissenting opinion in the Wytheville case, it seems has been overruled in New York by Wilcox v. Hanley, 31 New York R. 648. It would seem also that the case of Mandlove v. Burton, 1 Ind. R. 39, also cited in the same opinion, if not overruled, was certainly not followed in the subsequent case of Vandibur v. Love, 10 Ind. R. 54; Thompson, § 429.
The Pennsylvania cases proceed upon the ground that the exemption laws of that state -were intended for honest men, and not for cheats and rogues—words interpolated into the statute by the honorable court. Hpon the same principle I do not see why in every case upon an application for a homestead an issue should not be directed to determine whether the applicant is an honest man. According to my understanding, these exemptions are allowed without reference to the merit or demerit of the debtor. They are founded upon a policy that has no relation to the character or conduct of the parties claiming the benefit of them. Neither our constitution nor our statutes make any such exception, and *467 without at all concurring in the observation that every man is a cheat and a rogue who makes a conveyance invalid as to his creditors, until the legislature thinks proper to interpose I shall be content to follow the authorities which hold such a conveyance as to them (the creditors) at least does not divest the debtor of his right to a homestead. My opinion, therefore, is that the decree of the corporation court is erroneous, and must be reversed and remanded for further proceedings in ■conformity with the views here expressed.
Moncure, P., and Anderson, J., concurred in the opinion of Staples, J.