SNYDER *v.* MARTIN, *et al.*

Decided December 11, 1880.

1880
Special Term.

Snyder
v.
Martin *et al.*

1. When a cause is set for hearing by the plaintiff, and heard on bill, answer and exhibits, and the court directs a dismissal of the bill, the plaintiff cannot as a matter of right reply to the answer.

2. Where an answer is filed and not replied to, the allegations therein, whether responsive to the bill or not, must be taken as true.

3. If such answer raises a substantial defence to the case made by the bill, it will bar the plaintiff's equity.

4. Such parts of the bill, as are not controverted by the answer, must also be taken as true.

5. In our recording acts the word "creditors" means all creditors, who but for the deed or contract would have a right to subject the land embraced therein to the payment of their debts.

6. A purchaser of land by parol contract, which has been so far executed as to vest in him the right to compel his vendor to execute the parol contract in a court of equity, has an equitable right in said land so purchased, which a court of equity will fully protect against the lien of a subsequent judgment-creditor of his vendor.

7. When statute enactments do not interfere, a judgment-creditor can acquire no better right to the estate of the debtor, than the debtor himself has when the judgment is recovered. He takes it subject to every liability, under which the debtor held it, and subject to all the equities, which exist in favor of third parties; and a court of equity will limit the lien of the judgment to the actual interest, which the debtor has in the estate.

Appeal from a decree of the circuit court of the county of Greenbrier, rendered on the 15th day of June, 1878, in a cause in said court then pending, wherein A. C

Snyder was plaintiff and O. C. Martin and others were defendants, allowed upon the petition of said Snyder.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case :

In April, 1878, the plaintiff, Snyder, filed his bill for the enforcement of a judgment-lien against O. C. Martin and others in the circuit court of Greenbrier county. The bill is as follows :

" The bill of A. C. Snyder, plaintiff, filed in the circuit court of Greenbrier county, against Obediah C. Martin, Ann E. Buster and Alexis M. Buster, in their own rights and as executors of George W. Buster, deceased, Charles B. Buster, Lucy Buster, Issac C. Miller and Catharine, his wife, William E. Holland and Virginia E., his wife, Emaline S. Martin, Martha A. Martin, Thomas W. Martin, Ballard S. Martin, Bolivar E. Martin and Willis Tincher, defendants :

" The plaintiff complains and says :

" 1st. That on the 28th day of February, 1878, the defendant, Obediah C. Martin, confessed a judgment in his favor in the clerk's office of the county court of Greenbrier county for $200.00, with interest thereon from the 26th day of October, 1876, till paid, and costs, which costs amount to $3.50, and that said judgment has been duly recorded on the judgment-lien docket in said county; all of which will more fully appear from a copy of said judgment herewith filed and marked Exhibit 'A.'

" 2d. That at the time the judgment was confessed and docketed as aforesaid, the defendant, O. C. Martin, was and still is the owner of the legal, and perhaps the equitable, title to an undivided moiety of one hundred acres of land, more or less, situate on a branch of Muddy creek, in Greenbrier county, being the same land that was conveyed to said O. C. Martin and one Claudius B. Martin

by Joseph Martin and wife, by deed dated December 20, 1848, a certified copy of which is herewith filed and marked Exhibit 'B;' that after the making of said deed the same was set aside by a decree of this court in the suit of *Martin et ux.* v. *Martin et al.*, but afterwards the said Joseph Martin died intestate, leaving the said O. C. Martin and Claudius B. Martin as his only children and heirs at law, and the said O. C. Martin and the heirs of C. B. Martin are entitled to said land as such heirs.

" 3d. That he is informed that the said O. C. and C. B. Martin, some time about the year 1850, entered into an executory contract in writing with one George W. Buster for the sale of said one hundred acres of land; that by said contract said Buster bound himself to pay said Martin $150.00, with interest thereon from date of sale; that said written contract was delivered to said Buster, and soon after the date thereof he took possession of said land, and he and those claiming under him have occupied it ever since, and are still in the possession thereof; that said Martins bound themselves to convey said land to said Buster as soon as all the purchase-money should be paid; that said Buster never paid said purchase-money, nor any part thereof, nor have his heirs, representatives, or any one else paid the same, or any part thereof; and no deed has therefore ever been made for said land to said Buster or his representatives.

" 4th. That after the purchase aforesaid the said George W. Buster departed this life, leaving a widow, the defendant, Ann E. Buster, and the following children as his heirs at law, viz: The defendants, Alexis M., Charles B. and Lucy Buster; and the said Ann E. and Alexis M. Buster have duly qualified as the executors or administrators of said George W. Buster, deceased.

" 5th. That he is also informed that some time since the death of the said George W. Buster his representatives sold said land to the defendant, Willis Tincher, and that said Tincher is now in the possession of the same.

" 6th. That said Claudius B. Martin has also departed

this life, leaving a widow, Catharine Martin, who sub-sequently intermarried with the defendant, Isaac C. Miller, and she is now his wife; and said C. B. Martin also left the following children as his heirs at law: the defendants, Virginia E. Holland, the wife of W. E. Holland, Emaline S. Martin, Martha A. Martin, Thomas W. Martin, Ballard S. Martin and Bolivar E. Martin, the last two of whom are infants.

1880
Special Term.

Snyder
v.
Martin *et al*,

"7th. That said land has never been divided; that the title to one moiety is in the defendant, O. C. Martin, and the title to the other moiety is in the said children of C. B. Martin, deceased.

"8th. That the aforesaid judgment of the plaintiff is still unpaid, and the same operates as a lien upon the said O. C. Martin's moiety in said land. But if it is true, as the plaintiff has been informed, that said Buster purchased said land and has not paid the purchase-money therefor, then the plaintiff is willing that the sale may stand, upon the payment by said Buster's representatives of the purchase-money, and the interest accrued thereon, to the plaintiff in discharge of his said judgment.

"Prayer.—The plaintiff, therefore, prays that the land aforesaid may be partitioned between the defendant, O. C. Martin, and the said children of C. B. Martin, deceased, and that the moiety of said O. C. Martin may be decreed to be sold to pay the plaintiff's judgment; or, if the parties desire it, and the purchase-money has not been paid by Buster for said land, then the court may decree a specific execution of the contract of sale to said Buster, and decree that they pay the purchase-money for said land to the plaintiff in satisfaction of his judgment, and in default of such payment that said land may be sold for the purchase-money so decreed; and that the plaintiff may have such other and general relief as he is entitled to in the premises, &c."

The deed and judgment referred to are filed as exhibits with the bill.

In May 1878, a part of the defendants filed their joint

answer to the bill, to which there was no replication. The said answer is as follows:

" The joint answer of Ann E. Buster and A. M. Buster, in their own right and as administrators of George W. Buster, deceased, Charles B. Buster and Lucy Buster to a bill of complaint filed against them and others in the circuit court of Greenbrier county by A. C. Snyder.

" These respondents, reserving to themselves the benefit of all proper exceptions to the plaintiff's bill, for answer thereto, or to so much thereof as they are advised it is material for them to answer unto, answer and say, that as to the one hundred acres of land in the bill mentioned it is true that it was conveyed by Joseph Martin to said O. C. and C. B. Martin, sons of said Joseph Martin, by deed dated December 20, 1848, but it is true also, that said Joseph Martin and wife in the month of March, 1861, instituted their suit in chancery against the said O. C. Martin and the administrator and heirs of said C. B. Buster, he being dead, for the purpose of having said deed set aside, cancelled and annulled; that said suit was prosecuted, and on the —— day of——, 18—, a decree was rendered by the circuit court of Greenbrier county, by which said deed of December 20, 1848, and another deed of the 9th of January, 1849, between the same parties was set aside, rescinded and annulled, and thus the title to all the lands mentioned in said two deeds became re-vested in said Joseph Martin; that this decree was entered long before the plaintiff obtained his judgment against said O. C. Martin.

" Further answering, respondents say that in the year 1850 or 1851, George W. Buster, the husband of respondent, Ann E., and the father of respondents, A. M., C. B. and Lucy Buster, purchased the one hundred acres of land aforesaid from said Joseph Martin, paid the full amount of the purchase-money at the time of the purchase, was placed at once in possession of said land, which possession said George W. Buster and those claiming under him have held peaceably from that day to this;

that this purchase was made with the full knowledge and consent of said O. C. and C. B. Martin, who in fact united in said sale; that your respondents cannot state whether there was any written contract or title-bond between the said Joseph Martin and said George W. Buster or not, but they believe and aver that there was not, but on the contrary that the land was bought by parol contract, the purchase-money. paid and possession given at the time of the purchase. Having fully answered, they pray that they may be hence dismissed with their costs."

On the 15th day of June, 1878, the following decree was entered dismissing the bill with costs:

" This cause having been set down for hearing by the plaintiff upon the bill, the joint answer   Ann E. Buster and others, the answer of the infant defendants by their guardian *ad litem*, exhibits filed by plaintiff, and the cause coming on to be heard on the motion of the plaintiff upon the bill, the joint answer of Ann E. Buster and others, the answer of the infant defendants by their guardian *ad litem*, the bill taken for confessed as to the other defendants, who still fail to appear and answer, though regularly served with process, and was argued by counsel. And the court being of the opinion that the bill should be dismissed, directed a decree to be entered dismissing the same. Thereupon the plaintiff moved the court, as a matter of right, to permit him to reply generally to the answer of Ann E. Buster and others, which motion was refused and overruled. On consideration of all of which it is adjudged, ordered and decreed, that the plaintiff's bill be dismissed, and that the defendants, Ann E. Buster, Alex. M. Buster, C. B. Buster and Lucy Buster, recover from the plaintiff their costs in this suit expended."

From the decree aforesaid the plaintiff, Snyder, appealed.

*A. S. Snyder*, for appellants, cited the following authorities:

36

10 Gratt. 305; 2 Bibb 506; S. C. 5 Am. Dec. 633; 10 Pet. 247; 29 Gratt. 338; 28 Gratt. 401; Code, ch. 98, p. 535; *Id.*, ch. 74, § 5, p. 474; 2 Gratt. 182; Va. Law Jour. (Feb. 1877) 109; *Anderson* v. *Nagle*, 12 W. Va. 98; 4 Gratt. 407; 28 Gratt. 716; Va. Law Jour. (June, 1878) 343; 2 Rob. (old) Pr. 313; *Id.* 302; 7 How. 726; Code, ch. 125, § 30, p. 603; 2 Dan. Chy. (Perkins's ed.) 999; 41 N. H. 160.

*Robert F. Dennis*, for appellees, Buster's administrator and heirs, cited the following authorities:

Code, ch. 125, § 54; 4 Rand. 454-457; *Id.* 250; 1 Rob. (old) Pr. 312; *Id.* 313; 2 Dan. Chy. Pr. (4th Am. ed.) 982, note 1, 983; 1 Harrison Chy. Pr. 342; 5 W. Va. 264; *Clark* v. *McClure*, 10 Gratt. —; 12 W. Va. 98; 28 Gratt. 401; Code of Va. of 1860, p. 566, §§ 4, 5; *Id.* 1868, p. 474, §§ 4, 5.

JOHNSON, JUDGE.

After the plaintiff upon his own motion had the cause set down for hearing, and it was actually heard upon the bill, answers and exhibits, and a decree had been directed dismissing the bill, could the plaintiff then as a matter of right, reply to one of the answers? Section 50 of chapter 125 of the Code provides, that " a plaintiff in equity may at or after the rule day, at which the bill is taken for confessed as to any defendant, or at which his answer is filed, have the cause set for hearing as to such defendant; *and it may be so set for hearing on the answer, or upon a general replication thereto as the plaintiff may prefer.*" Generally speaking, if the answer is deemed insufficient from omitting to notice any material allegation in the bill, the plaintiff should *except* to it and call for a better answer. If the defendant by way of avoidance set up distinct matter, which is not called for by the bill, and the complainant wish to have the details of such new matter, he should amend his bill and state the matter by way of pretences, and call upon the defendant to

answer as to the particulars thereof. He cannot except

upon the ground of *insufficiency* to that part of the answer, which is not responsive to the bill, though if the fact stated be wholly immaterial, the answer may be objected to for impertinence. 2 Rob. (old) Prac. 313 and cases cited.

Where there is nothing in the answer except that which is responsive to the bill, and the answer admits the allegations of the bill, it is perfectly safe to set the cause for hearing upon bill and answer. But a plaintiff, who brings his cause to a hearing on bill and answer without a replication to the answer, must bear in mind, that the answer whether responsive to the bill or not must be taken as true. Rob. (old) Pr. 312, and cases cited. The reason given for this is, that by a failure to reply to the answer the defendant has been precluded from substantiating it by evidence. It is the duty of the plaintiff to look attentively into the answer, and see that the effect of the defendant's admission is not avoided by any new matter there introduced. If such should be the case, he should reply to the answer and proceed to establish his case by proof. And sometimes, though he should happen to need no witness on his part, yet it may be necessary to reply for the purpose of putting the defendant to the necessity of proving the allegations in his answer, as where he confesses the matters alleged by the plaintiff but sets forth some further matter in favor of the plaintiff's equity. See 2 Daniel Ch. Pr. 966, 967 ; *Rogers* v. *Mitchell*, 41 N. H. 154; *Slason* v. *Wright et al.*, 14 Vt. 208; *Dale* v. *McEvers*, 2 Cow. 118; *Scott* v. *Clarkson's ex'rs*, 1 Bibb 277 : *Copeland's ex'r* v. *McCue et al.*, 5 W. Va. 264.

In *Pierce* v. *Wert's ex'rs*, 1 Pet. C. C. R. 351, it was held, that if the complainant in a bill in chancery does not file a general replication to the answer of the defendant, the answer is to be taken as true; but after a cause was set for hearing on bill and answer, and a reference to the auditor, the plaintiff was allowed to file a

general replication. The court said : " The irregularity, which has taken place in this case, appears to have arisen from a want of an intimate acquaintance with chancery practice by gentlemen of the profession in this State, where there is no court of chancery. We feel therefore disposed on that account, to be more indulgent than we should otherwise think correct; and as no inconvenience can arise to the defendants by allowing the amendment except that of depriving them of an advantage, which the mistake of counsel on the other side has given them, the court grants the motion."

There seemed in this case to be some hesitation on the part of the court to allow the replication to be filed; but the circumstances in that case, and the case at bar, are widely different ; *there the cause had only been set for hearing, here* it was actually heard ; *there,* the counsel were ignorant of chancery practice, there being no courts of chancery in the State ; *here,* the counsel is an efficient chancery pleader, being quite familiar with the chancery courts of this State ; *there,* the failure to reply was caused by the mistake of counsel ; *here* was no mistake of counsel, but with a full knowledge of what he was doing, he had the case set for hearing on the bill and answer ; *there* no inconvenience would result to defendants, except the loss of the advantage they had by reason of mistake of counsel; *here,* the defendants would suffer other inconveniences.

When a cause is set for hearing, by the plaintiff, and heard on bill, answer and exhibits, and the court directs a dismissal of the bill, the plaintiff cannot as a matter of right reply to the answer. In what cases the court should in the exercise of its discretion permit a plaintiff to file a replication to an answer, after the cause has been submitted to the court, we will not undertake to decide in this cause. It must be remembered that the effect of the want of a replication is different, where defendant has taken depositions in the cause, and the cause is submitted upon bill, answer and depositions. In such

case the court will proceed in the cause as if a general replication had been filed. Code W. Va., ch. 134, § 4; *Scott* v. *Clarkson's ex'r*, 1 Bibb 277.

It was not error to refuse to permit the plaintiff as a matter of right, after the cause had been submitted and decided, to file a replication to the answer. To hold otherwise, would be not only to disregard the rules of chancery practice, but would result in great inconvenience to the circuit courts, and much embarrass them in the despatch of business, requiring them to hear and determine causes twice under such circumstances. Second; *Syllabus 2.* Where an answer is filed and not replied to, the allegations therein, whether responsive to the bill or not, must be taken as true. Third; If such answer raises a sub- *Syllabus 3.* stantial defence to the case made in the bill, it will bar the plaintiff's equity. Fourth; Such parts of the bill as *Syllabus 4.* are not controverted by the answer, must be taken as true.

What then are the facts in this cause as gathered from so much of the bill as is not controverted by the answer, and so much of the answer as is not responsive to the bill and raising a substantial defence thereto, together with the exhibits filed? First; It is an uncontroverted fact, that the defendant, O. C. Martin, confessed the judgment to plaintiff, as the bill alleges, and that the said judgment was duly docketed. Secondly; That on the 20th of December, 1848, Joseph Martin and wife conveyed the land mentioned in the bill to the defendant, O. C. Martin, and to his brother, C. B. Martin. Thirdly; That some time after the year 1861, the said deed was at the suit of said Joseph Martin and wife by the circuit court of Greenbrier county cancelled and annulled. Fourthly; That about the year 1850 or 1851, the said Joseph Martin by a parol contract, in which contract said O. C. Martin and C. B. Martin united, sold said one hundred acres of land, to George W. Buster, the husband of one and the father of others of the defendants; that said George W. Buster paid to the said Joseph

Martin the full amount of the purchase-money at the time of the purchase, and was placed at once in possession of the said land; and that said George W. Buster and those claiming under him, have held peaceable possession thereof ever since. It is insisted by the appellant, that the positive allegation of the bill, that the said contract of purchase by George W. Buster was *in writing*, is not denied by the answer, as the only reference in the answer to that matter is, that " your respondents cannot state whether there was any written contract or title-bond between the said Joseph Martin and said George W. Buster or not, but they believe and aver there was not, but on the contrary, that the land was bought by parol contract, the purchase-money paid, and possession given at the time of the purchase." This is in effect, that they have no positive knowledge on the subject, but believe and aver, that the contract was not in writing, but was a parol contract. This is a sufficient denial that the contract was in writing, and it put the plaintiff upon the proof of that fact alleged in the bill. But the answer does not stop here, but avers that the contract was by parol, and there being no replication to the answer, this averment must be taken as true.

Fifthly; The bill alleges, and it is not contradicted, that before the judgment was confessed Joseph Martin died intestate, and that O. C. Martin and C. B. Martin were his only children and heirs at law, and that as such heirs the said land descended to them.

Sixthly; The bill alleges, that the heirs of said George W. Buster sold said land to Willis Tincher, who is now in possession thereof.

Is a moiety of the said land liable to the lien of the plaintiff's judgment?

Sections 4 and 5 of chapter 74 of the Code are as follows: "Any contract in writing, made in respect to real estate or goods and chattels in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein for more than five years, shall, from the

time it is duly admitted to record, be as against creditors and purchasers as valid, as if the contract was a deed conveying the estate or interest embraced in the contract.

"Every such contract, every deed conveying any such estate or term and every deed of gift or deed of trust or mortgage conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record in the county wherein the property embraced in such contract or deed may be."

It will be observed in this cause, that the judgment was not recovered against Joseph Martin, under whom the party in possession claims title, but against O. C. Martin, a son of the said Joseph. Formerly it was held that the "creditors," who are protected by the statute against unrecorded deeds, were the creditors of the grantors only. *Pierce* v. *Turner*, 5 Cr. 154; *Land* v. *Jeffries*, 5 Rand. 211; *Prior* v. *Renny*, 6 Munf. 510. In the case ot *Land* v. *Jeffries*, Judge Green, "in one of the ablest opinions ever delivered by that learned judge," as observed by Judge Allen in *Thomas* v. *Gaines et al.*, 1 Gratt. 347, dissented from the opinion of the court. Mr. Justice Johnson also dissented from the opinion of the court in *Pierce* v. *Turner*. In *Thomas* v. *Gaines et al.*, 1 Gratt. 347, the court overruled the former decisions and established the law in accordance with Judge Green's dissenting opinion in *Land* v. *Jeffries*. But after the last decision was announced at the revisal of 1849, the question was settled by statute. The revisors of the Code of 1849, in their report say : " Nevertheless since *Thomas* v. *Gaines* a judge of the general court much respected has decided in opposition to it. We think it time that an end should be put to this judicial strife and for this purpose have drawn the section, to which this note is appended, in conformity with the decisions in

Anderson v. Anderson and Thomas v. Gaines." 1 Matt. Dig. 563, n.

The section of the statute which was then made a part of the Code, and has remained as a part of our statute-law ever since, is as follows: "The words 'creditors' and 'purchasers' where used in any previous section of this chapter, or in chapter 119, shall not be restricted to creditors of and purchasers from the grantor, but shall extend to and embrace all creditors and purchasers who, but for the deed or writing, would have title to the property conveyed, or a right to subject it to their debts."

Therefore in our recording acts the word "creditors" means, all creditors who but for the deed or writing, would have a right to subject the land embraced therein to the payment of their debts.

We are now confronted with the question, whether a moiety of the one hundred acres of land mentioned in the bill is liable to the judgment of the plaintiff against O. C. Martin, the son and heir of Joseph Martin, deceased. There was no unrecorded deed or contract in writing, but the defendants claim the land under a parol contract with Joseph Martin fully performed. Does this contract protect them against the judgment of the plaintiff?

. It is well settled, that where statute enactments do not interfere, a judgment-creditor can acquire no better right to the estate of a debtor, than the debtor himself has, when the judgment is recovered. He takes it subject to every liability, under which the debtor held it, and subject to all the equities which exist at the time in favor of third parties; and a court of chancery will limit the lien of the judgment to the actual interest which the debtor has in the estate. *Shipe, Cloud & Co.* v. *Repass et al.*, 28 Gratt. 716; Freeman on Judgments, § 357 and cases cited. Unless our statute of fraud and recording acts interfere, the plaintiff's judgment is no lien on the land sought to be subjected thereto.

Our recording acts have been a part of our code of

laws for a great length of time; but there have been comparatively few decisions of the Appellate Court con-struing them. The case of *McLure* v. *Thistle's ex'rs*, 2 Gratt. 183 was decided in 1845, and it was held, that the statute avoided as to creditors an unrecorded deed. Mc-Lure had purchased the property in 1835, paid the whole of the purchase-money and at once took and held posses-sion thereof, receiving his deed at the time of the purchase, but did not have it recorded until 1842; and after the mak-ing of the deed, but before the recordation thereof, Thistle recorded a judgment against Agnew, McLure's grantor. *Withers* v. *Carter et al.,* 4 Gratt. 407 was in many re-spects similar to the former case. A deed had been made for the property, which was sent to the clerk's office for recordation, but was lost on the way. It was held to be void as to the judgment-creditors. But there was a writ-ten contract, made before the deed, which the court held was unaffected by the statute, as it did not merge in the deed, as the deed was as to creditors an absolute nullity.

Judge Baldwin, in delivering the opinon of the court in that case, says: " It cannot be doubted that a fair pur-chaser of the equitable estate has a right to hold it against creditors of the vendor who have not previously recovered judgments. He can not do so, it is true, at law, which only notices the legal title; but he can in equity, which notices, protects and enforces the equitable title. * * * * A creditor of the vendor, who has not recovered judgment against him until after his sale of the *equitable* estate to a *bona fide* purchaser for a valuable considera-tion, has not equal equity; for both law and equity recognize that dominion over property which enables the owner to sell it, though indebted at the time; at law the sale is accomplished by a conveyance of the legal title, and in equity by the agreement to convey it. * * No one supposes that our registry law requires, in relation to bargains, sales and other conveyances of lands, tene-ments or hereditaments, the recordation of the executory contract. By an amendment introduced at the revisal

37

of 1819 (1 Rev. Code, p. 365, § 13), authority is given to have title-bonds and other written contracts in relation to lands admitted to record in like manner as deeds for the conveyance of lands, and when so admitted they are notice to subsequent purchasers of the existence of such bond or contract; but that is the only effect of the provision which does not avoid them either as to purchasers or creditors, if not admitted to record. It is the deed of conveyance, therefore, and that only, which the law avoids for want of recordation; and the executory contract is left untouched by the statute in the slightest degree."

Mr. Patton, a very distinguished lawyer, who was one of the revisory committee at the revisal of 1849, was counsel in the case of *Withers* v. *Carter*, which decision was made in 1848, and the next year a very material change was made in the registry acts, which change was no doubt caused by the decision referred to. As it had been held that the registry acts did not avoid the executory contract, which is the equitable title, the change was made to embrace all "contracts in writing" for the sale of real estate, &c., and declared them void as to creditors, &c., until admitted to record. It has been repeatedly held since that time, that such contracts unrecorded are void as to creditors, &c. *Eidson* v. *Huff*, 29 Gratt. 338; *March, Price & Co.* v. *Chambers*, 30 Gratt. 299; *Young et al.* v. *Devries*, 31 Gratt. 304; *Anderson* v. *Nagle*, 12 W. Va. 98; *Delaplain & Co.* v. *Wilkinson & Co. et al.*, supra.

But in *Floyd, trustee* v. *Harding et al.*, 28 Gratt. 401; *Hicks* v. *Riddick, Id.* 418; *Shipe, Cloud & Co.* v. *Repass, Id.* 716; *Burkholder* v. *Ludlam*, 30 Gratt. 255, and *Young et al.* v. *Devries*, 31 Gratt. 304, it is held, that land sold and purchased under a *parol contract*, the purchasers having paid the purchase-money, and having been put in possession, and holding the same under such contract, before a judgment is recovered against the vendor, is not liable to satisfy the judgment.

1880
Special Term.

Snyder
v.
Martin *et al.*

These decisions were made by the Court of Appeals of our mother-State, construing our own statute-laws enacted long before the separation, and they are entitled to our earnest consideration, and should not be departed from except for most cogent reasons. But we are compelled to say, if they correctly propound the law, a very strange condition of our · recording acts is exhibited, a good illustration of which is found in *Young et al.* v. *Devries*, the last case of the series, in which case it appeared, that all the claimants of the lands sought to be subjected had paid their purchase-money, and had been in possession of the lands from the time of their respective purchases, some under written contracts of purchase, and others under parol contracts. Those who had taken the precaution to have their contracts reduced to writing, and who did not have them recorded, were turned off from the lands they had occupied, and were compelled to give them up to be sold to satisfy the judgment-liens; but those who had been more negligent, and did not take the trouble to procure written contracts or deeds, were protected and their homes saved to them. It was called gross negligence in the former not to record their contracts; but the others were protected, because these contracts were such as the statute did not require to be recorded, and which it would be impossible to admit to record. Thus in the one case the direst calamity is visited upon one for his gross negligence, and a premium given to the other for what was certainly a grosser negligence.

It is settled law in Virginia and this State, that creditors stand on higher ground than purchasers, and are not chargeable with actual notice of unrecorded deeds and contracts. The manifest policy of our recording acts is, that persons shall not be permitted to obtain credit on the fact, that the records disclose that they are the legal or equitable owners of property, and then be allowed to escape the payment of their debts by secret transfers of such property. But if such transfers either legal or equitable are placed upon record, the creditor is bound thereby.

If the late Virginia decisions are correct, two rules bind the creditor now instead of one. He must not be content, when trusting his neighbor, with an examination of the records of his county to ascertain what real estate he owns, but if he would be safe, he must not only do this, he must also enquire who is in possession of the property, and whether he claims it, and how. It may be that the party, who claims to have a right to the land, is in possession by his tenant, and it would be still more difficult to ascertain who in fact claimed to be the owner of the land. The whole question turns upon what construction is given to our recording acts taken in connection with the statute of frauds.

While in the construction of statutes the constant endeavor of the court is to ascertain and give effect to the intention of the Legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. The resolutions of the Baron of the Exchequer in *Heydon's Case*, 3 Rep. 7, were as follows: " For the sure and true interpretation of all statutes in general, be they penal or beneficial, restrictive or enlarging of the common law, four things are to be discussed and considered : 1st. What was the common law before the making of the act? 2d. What was the mischief and defect, against which the common law did not provide? 3d. What remedy the Parliament hath resolved and appointed to cure the disease of the commonwealth? And 4th, what was the true reason of the remedy?" In New York it is held, that it is the duty of the courts so to construe statutes as to meet the mischief, to advance the remedy, and not to violate fundamental principles. (*Hart* v. *Cleis*, 8 Johns. 44); also to read statutes according to the most natural import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. *Waller* v. *Harris*, 20 Wend. 561. However, statutes are sometimes extended to cases not within the letter of them, and cases are sometimes ex-

cluded from the operation of statutes though within the letter, on the principle that what is within the intention of the maker of the statute is within the statute, though not within the letter, and that, which is not within the intention of the makers, is not within the statute, it being an acknowledged rule in the construction of statutes that the intention of the makers ought to be regarded. *Brown* v. *Gates*, 15 W. Va. 131. It is an established rule of law that all acts *in pari materia* are to be taken together as if they were one law; and they are directed to be compared in the construction of statutes, because they are considered as founded upon one system and having one object in view. *State* v. *Cain*, 8 W. Va. 773; *Curran* v. *Owens*, 15 W. Va. 227.

Section 1 of chapter 98 of the Code provides, that " No action shall be brought * * * upon any contract for the sale of real estate or the lease thereof for more than a year * * * unless the * * * contract * * * or some memorandum or note thereof be in writing and signed by the party to be charged thereby or his agent." This was the statute-law at the time *Withers* v. *Carter* was decided, and when the amendment of 1849 to the recording acts was made. Judge Baldwin in his opinion in *Withers* v. *Carter* nowhere intimated, that a parol contract, partly performed, as to creditors would stand on higher ground, than a written unrecorded contract in writing, if that were by the statute required to be admitted to record, for the protection of the purchaser. He distinguishes between the *legal* and the *equitable* title. He knew that parol contracts for the sale of real estate were void under the statute; and I do not suppose it ever entered his mind, that if the Legislature had declared an unrecorded written contract for the sale of real estate, which was the equitable title thereto, void as to creditors, a parol contract, partly performed, would be good as against creditors; nor do I think, that his reasoning can possibly lead to such a conclusion.

When the revisors recommended the change in the

law in 1849, no contract for the sale of land was valid, unless in writing; but written contracts were not required to be recorded, as decided in *Withers* v. *Carter;* hence the change, that written contracts as well as deeds must be recorded, to protect purchasers against creditors. That amendment having been made, it was considered doubtless by the revisors, and has generally been understood by the profession until the decision in *Floyd's trustee* v. *Harding,* that there was no way in which purchasers could escape liens upon their lands, except through a deed or written contract for the property duly and promptly recorded. It seems to me, that by the amendment of 1849 the Legislature clearly intended to make conveyances and contracts of sale of real estate void as to creditors, unless they were recorded, at the time the judgments of the creditors were docketed.

Now the Court of Appeals of Virginia draws a distinction between *written* and *parol contracts.* It holds, that the latter are not affected by the statute, as only written contracts are by it declared void. In reading these cases, in which this distinction is made, I am impressed with the idea, that the anxiety of the court to protect and sustain what it conceived to be the justice of the case, forced it to resort to doubtful construction. I cannot see how the Legislature could well declare its intent more distinctly than it has done, that no contract for the sale of real estate should be valid as against creditors unless recorded. It could not require the recordation of parol contracts, but having declared all parol contracts for the sale of lands void and then declaring all written contracts for the sale of such estate void as to creditors unless recorded, to my mind the legislative intent is just as manifest, as if it had expressly declared *parol contracts* as to creditors void, being incapable of recordation. If these late Virginia decisions propound the law correctly, a purchaser, who violates both these statutes, receives the same protection, as if he had complied with both; while a purchaser, who complies with one only receives the benefit of neither. Such a con-

1880
Special Term.

Snyder
v.
Martin et al.

struction, it seems to me, involves a manifest absurdity. If the statute is unjust, it is for the Legislature and not the courts to afford the remedy. It is certainly no more unjust however to the man in possession under a parol contract, who has paid his purchase-money, than it is to the man, who has complied- with one statute and procured his deed or written contract, paid his purchase-money and had the possession all the time; nay, it is more unjust to the latter, for he has been much more diligent than the former. It is no sufficient answer to say, that a man may be kept out of his deed or written contract by fraud, for no man need pay his money, or improve the property, until the deed or contract is executed; and it is just as gross *laches*, and more, to fail to take this precaution in the face of the statute that declares his parol purchase void, than it is to fail to have the deed or contract recorded, because after it has been procured it may be accidentally lost or destroyed.

In *Floyd's trustee* v. *Harding* stress is laid upon the fact, that courts of equity enforce parol contracts, partly performed, for the sale of real estate; and it is assumed that courts of equity enforce such contracts to the prejudice of innocent third persons. It may be doubted whether courts of equity in enforcing *parol contracts* in the face of the statute of frauds have not done more harm than good. Mr. Justice Bronson in *Waller* v. *Harris*, 20 Wend. 562 said: " Courts cannot correct what they may deem either excesses or omissions in legislation, nor relieve against the occasionally harsh operation of statutory provisions, without the danger of doing vastly more mischief than good. Let us take for example the statutes of frauds and of limitations, which have filled our books with legal adjudications. Had' the plain and unequivocal language of these laws been rigidly followed, there would undoubtedly have been a few cases of great hardship; but when it had once been settled, that the statutes were not to be limited in their operation by over refined and artificial interpretations, men would have been able to understand and govern themselves by the law of the

land, and an incalculable amount of legal controversy would have been avoided."

But the well known and usually acknowledged ground on which courts of equity exercise their jurisdiction in decreeing specific performance of parol contracts partly performed is this and only this, that fraud and injustice would result from allowing one party to refuse to perform his part after performance by the other upon the faith of the contract. It is therefore on the distinct ground that a party, who has taken another's money for land and put him in possession, and he has improved it, would be guilty of a fraud, if he refused to make a title to the purchaser, that courts of equity require him to make the title. Fraud is the special object of hate in a court of conscience, and it will be relieved against under all circumstances; courts of equity therefore exercise jurisdiction in such cases, because of their power to prevent the consummation of fraud. In such case the conscience of the man, who put the purchaser in such condition, is affected, but the conscience of no one else is affected, unless he has participated in the fraud.

In *Blore* v. *Sutton*, 3 Meriv. 237, there was a bill filed for the specific performance of an agreement to grant a lease. It was held, that there was no agreement in writing, as required by the statute; but on the other hand it was insisted, that there was a *parol* agreement partly performed. Sir William Grant, master of the rolls, said: " It was insisted, however, that there is a parol agreement in part executed; for the plaintiff has expended large sums in building upon the premises, partly in Lady Bath's lifetime, but principally since her death. The agreement, it is said, is therefore binding upon the remainder-man. It is rather difficult to say, that there is even a parol agreement by an authorized agent of Lady Bath. For the evidence is, that Noble by the direction and with privity of Mr. Cockerell, who was Lady Bath's agent, did make a verbal agreement with the plaintiff. This seems rather a delegation of Cockerell's authority than the formal exercise of it.   *   *   *

Supposing, however, that by the effect of Cockerell's direction to Noble this can be construed to be the parol agreement of Cockerell himself, and that subsequently to such agreement, and on the faith of it, an expenditure has been made by the plaintiff, there is no authority for holding that the remainder-man is bound by such an agreement. It is considered as a fraud in a party permitting an expenditure on the faith of his parol agreement, to attempt to take advantage of its not being in writing. But of what fraud is a remainder-man guilty, who has entered into no agreement, written or parol, and has done no act, on the faith of which the other party has relied? The only way, in which he could be affected with fraud, would be by showing that an expenditure had been permitted by him, with the knowledge that the party had only a parol agreement from the tenant for life."

How then can a creditor's conscience be affected by a parol agreement made by his debtor for the sale of land? Such contracts do not bind third parties, who are innocent of fraud. It is an agreement that can only be enforced on the ground of fraud in the party who thus sells the land; and it can in no wise affect creditors under our statute.

The argument that " the equitable estate of the purchaser is good against creditors of the vendor," has no application under our recording statutes; and the cases cited in *Floyd's trustee* v. *Harding*, in support of the position have no reference to the rights of creditors under such statutes. It never could have been intended by the Legislature to put a party claiming under a parol contract in a better condition than one who had a deed or written contract for the land. No premium should be placed upon a plain violation of the statute of frauds. And it certainly is a high premium put on such violation to place a man, who has a mere parol contract partly executed, in a safer position as to creditors than one who has taken the trouble to obey the statute and have a deed

38

or contract executed to him for the land, and which may have been lost or destroyed.

I am of opinion, therefore, that the plaintiff has a lien by virtue of his judgment on one moiety of the one hundred acres of land described in the bill, and that the court erred in dismissing plaintiff's bill. The decree of the circuit court of Greenbrier county, rendered in this cause, should therefore be reversed, with costs, and this cause should be remanded to the circuit court of Greenbrier county, with instructions to proceed in the cause according to the principles of this opinion, and further according to the principles of equity. Another serious objection to the said construction of the statute by the Virginia court is, that it places a premium on perjury. Let men once know, that they have lost their lands by failing to record their titles, and the temptation is very strong to destroy such writings and prove a parol contract and deny the written.

GREEN, PRESIDENT:

The principle question presented by this record is, whether a parol contract, so far executed as to entitle the purchaser to a specific execution of the contract, is good against a subsequent judgment-creditor. Independent of any statute-law the lien of a judgment is a charge upon the *precise* interest, which the judgment-debtor has, and upon no other. The apparent interest of the debtor can neither extend nor restrict the operation of the lien, so that it shall encumber any greater or less interest than the debtor *in fact* possesses. The judgment-creditor has a charge on the interests of the defendant in the land, just as they stood at the moment the lien attached, therefore though he seems to have an interest, yet if he have none in fact, no lien can attach. The rights of the judgment-lien owner cannot exceed those, which he might acquire by a purchase from the defendant with full notice of all existing legal or equitable rights belonging to third persons. The attaching of a judgment-lien upon the legal title forms no im-

Syllabus 7.

pediment to the assertion of all equities previously existing over the property. The judgment-lien is in equity but a charge on the equity held by the defendant, where the lien attaches. It can only hold the legal estate subject to the equity. It is well settled, that a judgment-lien on the land of the debtor is subject to every equity, which existed against the debtor at the rendition of the judgment; and courts of equity will always limit the lien to the actual interest of the judgment-debtor. The lien of the judgment creates a preference over subsequently acquired rights, but a court of equity will always protect the equitable rights of third persons existing at the time the judgment-lien attaches. See Freeman on Judgments pp. 309, 310 and 311, §§356, 357; *Churchill* v. *Morse*, 23 Ia. 229; *O'Rourke* v. *O'Conner*, 39 Cal. 442; *Coster's ex'r* v. *Bank of Georgia*, 24 Ala. 37–64; *Walker* v. *Moody*, 65 N. C. 599; *Ellis* v. *Turley*, 1 Paige Chy. 280; *Morris* v. *Mowett*, 2 Paige Chy. 586; *Brown* v. *Pierce*, 7 Wall. 205.

As illustrations of the extent and scope of the rule above laid down we find many cases, in which it has been held, that a judgment-lien is subject to any express trust existing, when the judgment-lien attaches. See *Executors of Ash* v. *Executors of Livingston*, 2 Bay 80; *Cover* v. *Black*, 1 Barr (Pa. St. R.) 493; *Lodge* v. *Liveley*, 4 Sim. 70 (6 Cond. Eng. Chy. R. 37); *Whitworth* v. *Guagain*, 3 Hare 216; *Shyrock* v. *Waggoner*, 4 Casey (28 Pa. St.) 430; *Withers* v. *Carter*, 4 Gratt. 407. See also *Orth* v. *Jennings*, 4 Blackf. 420. So also it is held a judgment-lien must yield to prior equitable mortgages or other trusts. *Williams* v. *Craddock*, 4 Sim. 313 (6 Cond. Eng. Chy. R. 142); *Brace* v. *Duchess of Marlborough*, 2 P. Wms. 491; *Barr* v. *Hatch et al.*, 5 Ohio 538; *Keirstead* v. *Avery*, 4 Paige 14; *Prior* v. *Perprage*, 4 Price 99. So also as to unrecorded deeds where the recording statutes only declare them void against purchasers without notice. See *Rodgers* v. *Gibson et al.*, 4 Yeates 111; *Jackson* v. *Post*, 9 Cow. 120; *Jackson* v. *Lowe*, 4 Cow. 606; *Jackson* v. *DuBois*, 4 Johns. 216; *Heister* v. *For-*

1880
Special Term.

Snyder
v.
Martin et al.

*tue*, 2 Burncy 40. So also a judgment-creditor must yield to a prior equitable estate created by a written contract. *Hoagland* v. *Latourette*, 1 Green's Chy. 254; *Finch* v. *The Earl of Winchelsea*, 1 P. Wms. 282; *Mooney* v. *Dorsey*, 7 Smed. & M. 22; *Withers* v. *Carter*, 4 Gratt. 407. So too the judgment-lien must yield to prior vendors' liens or specific liens of any kind or prior equities of any description. See *Walkins & Fraperell* v. *Wassell*, 15 Ark. 73; *Arnold* v. *Palrich*, 6 Paige 310; *Ringold* v. *Bryan*, 3 Md. Chy. 488; *Aldridge* v. *Dunn*, 7 Blackf. 249; *Walton* v. *Hargreaves*, 42 Miss. 18; in the matter of Howe, 1 Paige Chy. 125; *Keirstead* v. *Avery et al.*, 4 Paige Chy. 9. So a judgment-lien must yield to a prior resulting trust in a third party. See *Williams* v. *Hollingsworth*, 1 Strobh. 103; *Hatchett* v. *Callender et al.*, 32 Vt. 98; *Ellis* v. *Townsley*, 1 Paige 280. So too a judgment-lien will be postponed to a prior constructive trust. See *Everett* v. *Stone*, 3 Story 447; *Brown* v. *Pierce*, 7 Wall. 205; *Baker* v. *Morton*, 12 Wall. 150.

It is true, that in the State of Ohio a controversy long existed, whether an equitable mortgage was not an exception to the rule, that a judgment-lien must yield to all prior equitable liens held by a third person against the debtor's lands; but these controversies were the result of, or at least were much influenced by, their statute-law. In *White* v. *Denman*, 1 Ohio St. N. S. 110, these decisions are reviewed; and the conclusion reached is, that on the well-established principles of courts of equity an equitable mortgage ought to have priority over a subsequent judgment-lien, and that as an original question the court would have held, that this equitable rule was not set aside or controlled by the Ohio statute-law; but as it had been held otherwise on construction of their statute by their Supreme Court in several cases, these decisions ought to be acquiesced in.

And in several States it has been held, that a judgment-lien ought to have priority over a prior secret vendor's lien. See *Webb* v. *Robinson*, 14 Ga. 216; *Johnson*

v. *Cawthorn*, 1 Dev. & B. (N. C.) 32-35 ; *Roberts* v. *Rose et al.*, 2 Hun. pp. 145-147. But these decisions were based on peculiar views by these courts of the character of a vendor's lien. And in truth in the United States generally the vendor's lien has received but little countenance, and in a number of States it has been held to have no existence, as in Pennsylvania (see *Kaniffelt* v. *Bower*, 7 Searg. & R. 54), in North Carolina now, though not formerly, (see *Womble* v. *Battle*, 3 Ird. Eq. 182), in South Carolina (see *Wragg's Rep.* v. *Comp. Gen. et al.*, 2 Dessau. 509-520), in Massachusetts (Story, Judge, in *Gilman* v. *Brown et al.*, 1 Mason 192-219), in Maine (see *Philbrook* v. *Delano*, 29 Me. 410-415), and in Kansas (see *Simpson* v. *Kundee*, 3 Kan. 172) ; and in other States its existence is undecided and doubtful, as in New Hampshire, Connecticut and Delaware (see *Atwood* v. *Vincent*, 17 Conn. 576-583; *Budd et al.* v. *Busti*, &c., 1 Harr. 69 and 74; and *Avlin* v. *Brown*, 44 N. H. 10) ; and it has been received with disfavor in other States including Virginia. But as now by statute-law in this State the secret vendor's lien has been abolished, and it can have no existence, only when reserved on the face of the deed, which must be recorded, there can be no question, that in this State a vendor's lien, when it has any existence, will have priority over a subsequent judgment. It may therefore be laid down as a universal rule established by many cases, that a judgment-lien is always subject to every possible description of equity held by a third party against the debtor at the time the judgment-lien attached ; and that it is immaterial, whether the rights of such third party consist of an equitable estate or interest in the judgment-debtor's land, an equitable lien on his land, or a mere equity against the debtor which attaches to or affects his land. Nor is it at all material, whether the judgment-debtor has or has not, when he contracted his debt or obtained his judgment or docketed the same, notice of such equitable estate, equitable lien, or mere equity. If they be prior in time to the

judgment, they will always be preferred to the judgment-lien. The authorities we have cited abundantly sustain this conclusion; and there is no exception to this universal rule, except where such exception has been made by some statute-law.

Unquestionably therefore a purchaser of land by parol contract, to the full extent that a court of equity would recognize his equity against the party, who by parol contract had agreed to sell him the land, should be held in a court of equity to have rights superior to any subsequent judgment-creditor, whether the judgment-creditor had or had not notice of his contract to purchase the land, unless some statute-law has rendered the judgment-creditor's lien superior to his equity. It is claimed that the statute of frauds produced this effect, and that after its passage the judgment-creditor's lien must be held as superior to any equitable estate or right, which a third party had before the rendition of the judgment acquired from the debtor to any land, which was based in whole or in part on the fact, that he had made a parol contract for the purchase of the land. We will now consider whether this be the real effect of the statute of frauds.

This statute, so far as it relates to the sale of lands, is to be found in chapter 98, page 535, of our Code, and is in these words: "No action shall be brought upon any contract for the sale of real estate, unless the contract or some memorandum or note thereof be in writing and signed by the party to be charged thereby or his agent." This statute was first passed in the 29th year of Charles the Second, A. D. 1677. Its language then was "that from and after the fouer and twentyeth day of June, which shall be in the year of our Lord one thousand six hundred and seaventy and seaven, All Leases Estates Interests of Freehold or Terms of years or any uncertaine Interest of, in or to any Messuages Mannours Lands Tenements or Hereditaments made or created by Livery of Seisin onely or by Parole and not putt in Writeing and signed by the parties soe makeing or creat-

ing the same or their Agents, thereunto lawfully authorized by Writeing, shall have the force and effect of Leases or Estates at Will onely, and shall not either in Law or Equity be deemed or taken to have any other or greater force or effect, Any consideration for making any such Parole Lease or estates or any former Law or Usages to the contrary notwithstanding." See Throop on Verbal Agreements pp. 21 & 22.

This statute with slight variations has been in force ever since its passage in 1677. When it was passed, courts of equity were, as they have ever since been, in the habit of treating as a trustee, a party, who by *fraud* had procured the legal title to land from another. The party, who had thus been defrauded, was held by a court of equity to be still the equitable owner of the land ; and the party, who had procured the legal title by fraud, was held by a court of equity to be a mere trustee for the other ; and the court would compel him as such to account for the rents and profits, and would order a reconveyance of the land to its real or equitable owner. These trusts, which arose not from the intention of the parties, and from frauds committed by one party on another, have received the appellation of *constructive* trusts ; and courts of equity have always exercised the power of raising a trust by construction in cases of fraud, as the most suitable mode of putting it in the power of the court to do equal and complete justice between the parties. See Perry on Trusts ch. 4, pp. 186, 187, §166.

The statute of frauds in express terms declares, that it shall be binding on courts of equity as well as courts of law. And since its passage courts of equity as well as courts of law have always held *naked* parol agreements for the sale of lands void, even if the defendant admitted the agreement as stated by the plaintiff, provided he at the same time pleaded the statute. See *Heth's ex'r* v. *Woodbridge's ex'r*, 6 Rand. 609 ; 2 Bro. C. C. 564; 1 Bro. C. C. 416 ; 4 Ves. 23; 6 Ves. 12 ; 2 Black., H. 63. But after the passage of this statute courts of equity held,

1880
Special Term.

Snyder
v.
Martin et al.

that if after a parol contract for the sale of land was entered into, it was so far performed by the purchaser, that a refusal to execute the contract by the seller would operate a fraud upon the purchaser, and would leave him in a situation, which did not lie in compensation, then they would treat the seller, who holds the legal title, as a trustee, and the purchaser as the equitable owner of the land, and order the seller to convey the same to the purchaser on his full compliance with the contract, not because the court regarded the parol contract as valid, but because the fraudulent conduct of the seller in permitting the purchaser to so far perform his contract justified the court on the general principles above explained in exercising its accustomed power of raising a trust by construction in such fraudulent case, as the only mode of putting it in the power of the court to do complete justice between the parties.

It is universally agreed, that the only ground, on which courts of chancery consider part performance of a parol agreement to sell land as creating an equity in the purchaser to be regarded as the equitable owner of the land, and therefore to have the contract specifically executed, notwithstanding the statute of frauds, is, that if he were not so held to be the equitable owner of the land, the seller would commit a fraud upon him. See *Hamilton* v. *Jones*, 3 Gill & S. 127; *Heth's ex'r* v. *Woodbridge*, 6 Rand. 605; *Carlisle* v. *Fleming*, 1 Harr. 421–430; *Townsend* v. *Houston*, 1 Harr. 532–540; *Anderson,* v. *Chick*, 1 Bailey Eq. 118–124; *Rathburn,* v. *Rathburn,* 6 Barb. 99–106; *Despair* v. *Carter*, 21 Me. 321; *Gilmore* v. *Johnson*, 14 Ga. 683; *Farrar* v. *Patton*, 20 Mo. 81. Whenever therefore after a parol contract has been entered into for the sale of land, and it has been so far performed by the parties as to place the purchaser in a position, that if the contract was treated as void, it would operate as a fraud on the purchaser, he will therefore be regarded by a court of equity as the equitable owner of the land, and on his performing hi

contract in full a court of equity will decree that a deed shall be made to him by the seller. In other words, such oral contract, when followed up by such part performance, originates a *constructive* trust, just as other frauds give rise to *constructive* trusts. This *constructive* trust having been raised, I can conceive of no reason why it should not like all other constructive trusts, equitable estates and equities be preferred to a subsequent judgment-lien. We have seen, that every imaginable equity attached to the land is preferred to a subsequent judgment-lien. Why should this equity be excepted from this universal rule ? Not because it originated in a fraud, which bound only the conscience of the seller, and therefore not binding the conscience of the judgment-creditor of the seller, it ought not to be enforced against him ; for if this were so, the same reasoning would apply to every constructive trust originating in the fraud of the judgment-debtor. Yet we have seen, that all such constructive trusts have ever been held to be enforceable against the subsequent judgment-creditor of the party committing the fraud. This preference, which a court of chancery always gives to the equity of a third person over a subsequent judgment-lien, ought not to be set aside by reason of its acknowledgment being in controvention to the policy of the statute of frauds. The courts of equity under circumstances hold, that this statute does not control the case so far as the third party and the judgment-debtor are concerned. Why then should it be supposed, that the judgment-creditor can stand in any better position than his debtor in controversion of a well established rule of courts of equity of universal application ? It can not be because the statute of frauds was passed for the protection of the judgment-creditor; for it is obvious on the very face of this statute, that it was not passed to protect his interests, but solely to protect the rights of the parties to the oral contract for the sale of the land. The preamble of the act shows clearly, that this was its object and its only object.

39

And courts of equity under such circumstances hold, that the rights of the parties to the oral contract can only be protected by the specific enforcement of the contract notwithstanding the statute of frauds. How can a judgment-creditor claim, that this is in controvention of the statute, if it was not enacted for his benefit? And the preamble of the statute shows that it was not. This preamble is: " For the prevention of many fraudulent Practices, which are commonly endeavoured to be upheld by Perjury and Subornation of Perjury Bee it enacted by the King's most excellent Majestic by and with the advice and consent of the Lords Spirituall and Temporal and the Commons in this present Parlyament and by the authoritie of the same."

It is obvious from this preamble, that the object of this statute was not to protect creditors, but to prevent a party to an oral contract for the sale of land being defrauded by the other party suborning witnesses to testify falsely as to the terms of the contract. In other words, the statute was a mere law of evidence intended to protect from injury the parties to the contract; and the creditors of neither of the parties were intended to be either benefited or injured by its passage. Why then should not the creditor be left in the exact position which he occupied before, that is, having a right by a judgment to obtain a lien on all the lands of his debtor, subject, however, to all equities of third persons, existing at the time his judgment-lien attaches? I confess I can see no good reason to be found in this statute, why the creditor should not stand just where he would have stood, had the statute never been passed. In accordance with these views it was decided in *Massey* v. *McIlwaine et al.*, 2 Hill's Chy., (S. C.) 428, " that a parol contract to convey land, which has been performed, and which would be set up by a court of equity, has equal validity with a written contract; and the party entitled to specific performance may hold the land against subsequent judgment-creditors of the vendor."

But it is insisted, that if the statute of frauds does not render a parol contract, so far executed as to entitle the purchaser to a specific execution of the contract, inoperative as against a subsequent judgment-lien, our recording acts will have that effect; and if they alone do not have that effect, when construed in connection with the statute of frauds, it ought to be held, that this effect follows. The recording acts supposed to produce that effect are the 4th and 5th sections of chapter 74 of our Code, page 474. They are:

" 4. Any contract in writing made in respect to real estate or goods and chattels in consideration of marriage, or made for the conveyance or sale of real estate or a term therein of more than five years, shall from the time it is duly admitted to record be as against creditors and purchasers as valid, as if the contract was a deed conveying the estate or interest embraced in the contract.

" 5. Every such contract, every deed conveying any such estate or term, and every deed of gift or deed of trust or mortgage conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county, wherein the property embraced in such contract or deed may be."

These acts have been in force since the formation of this State and for a long time previous thereto. Their history and the substance of the Virginia decisions rendered in construing them are given in the opinion of brother Johnson, and need not be here repeated. When they were enacted, we have seen that the common law and the law as administered by courts of equity protected in very different degrees creditors and purchasers. The purchaser had only to ascertain, that the seller of land had the legal title in him, and he was perfectly protected from all risk, if he acted in good faith and did not buy land, on which he knew or had the means of knowing, some third person had an equitable lien, or which he did

not know, or had not the means of knowing, in equity and justice belonged to such third person. But the status of the creditor was far different. The creditor to a large extent trusts his debtor on his faith in his integrity. He does not, when he credits him, rely solely or principally on the property he may own; for he knows, that he may dispose of all his property, before a judgment is rendered against him; and when a judgment was obtained against him, he acquired a lien on his lands, which was good only against subsequent conveyances and liens legal or equitable, but not against third persons, who had prior equitable-liens or claims of any character on his lands, or who were the equitable owners of the land, though their claims or this equitable ownership were secret. For courts of equity hold, that property, which belongs in equity and good conscience to A., should not be taken for the debt of B.; and therefore they would not suffer the lien, which a judgment-creditor had acquired on the legal title, to be used as a means of producing such result. A perfect protection to the purchaser of real estate could be afforded without wrong or serious inconvenience to third persons by simply providing a means, by which he could ascertain readily and certainly, whether the party, of whom he was about to purchase, had the legal title. For if he had, the common law rendered him perfectly safe in making the purchase. But such perfect protection could not be given a creditor without producing most disastrous results. The right of the debtor to dispose of his property before judgment could not be enterfered with without producing immense mischief; nor could the creditor, after he obtained a judgment, be put upon the footing of a purchaser without the grossest injustice to third parties. Still some protection could be extended to creditors without injustice or serious inconvenience to third persons. If the evidence of this equitable title to land or of this lien on land was in writing, it might be put of record, so that the creditors might have

the means of readily ascertaining its existence. But there were large classes of equitable titles and equitable liens, of the existence of which there was no written evidence. There was therefore no such facile and just mode of protecting creditors against such equitable titles and liens. It is obviously impossible to protect the creditor against all such equitable liens and titles without doing the grossest and most palpable injustice to third persons. Protection against any such title or lien could of course not be effected by any recording act; and the Legislature in its wisdom concluded, that it had better not attempt to furnish protection to the creditor in any other manner than by recording acts. Protection to a certain limited extent could be furnished creditors in this manner without injustice or serious inconvenience to third persons. Protection in any other manner involves serious difficulties, if wrongs to third parties were to be avoided; and the Legislature determined that it was safer not to attempt such protection, and if the equitable title or lien of a third person was not evidenced by a writing, to leave his rights and those of the judgment-creditor precisely as they had been fixed by the common law and the law as administered by courts of equity.

Our recording acts above copied furnish to a purchaser perfect protection by simply requiring all deeds to be recorded, and if unrecorded, rendering them void as to purchasers for valuable consideration without notice. Such purchasers needed no protection against equitable titles and liens. The creditor by these acts is obviously protected to the extent of requiring all contracts for the sale of lands, when in writing, and all deeds conveying lands to be recorded and by declaring them void against creditors, if not recorded. This is all the protection these acts afford the creditor, and is in truth all the protection, which can be afforded him by any recording act. These acts do not, and no recording act could, afford a creditor any protection against any equitable title or

lien, which was not evidenced by writing, such for instance as an equitable title to land arising from a parol contract having been made and so far executed as to entitle the purchaser to a specific execution of the parol contract, or any other constructive trust, or any resulting trust. Nor has the Legislature thought proper to protect the judgment-creditor by any other form of legislation against these sorts of equitable titles and liens; for we have seen that the statute of frauds furnishes him no such protection.

I have not been able to find in our recording acts the least evidence, that the Legislature intended to avoid for the benefit of a creditor an equitable title, which was preceded by a verbal contract, and which was based on a fraud attempted by the seller in refusing to make a deed for the land, after it had been improved by the purchaser. I could not expect to find such intention in any recording act. It would be entirely out of place in such an act.

It is claimed, however, that the statute of frauds, and these recording acts are *in pari materia* and should be taken together, as if they were one law, the two having but one object in view. I have shown that the object in view of the passage of the statute of frauds, was as plainly shown by its preamble not to be the protection of creditors but the protection of one of the parties themselves to contracts for the sale of lands against the subornation of perjury, which was practiced by the other party in procuring witnesses, who by perjury would misstate a parol contract. Our recording acts have an entirely different object in view. They operate only on written contracts, as to the contents of which there can be no misrepresentation by perjury. These recording acts were not intended to protect one party to a contract for a sale of land from the fraud and perjuries of the other; but they had in view solely the protection of other parties, purchasers and creditors, from other and different evils, that is, from secret liens in writing.

These recording acts and the statute of frauds ought not therefore to be construed together, as if they constituted one act. In fact their objects are so unconnected, that I could hardly conceive of their being incorporated into one act. If they had been enacted for the first time by this State and had been incorporated into one act, this would have rendered them unconstitutional and void, as embracing more than one object.

When the statute of frauds was passed, more than two hundred years ago, there was no legislative disposition to protect creditors. There being then very little active business of any sort, creditors were then a comparatively unimportant class. But as commerce and business increased, the importance of creditors as a class increased, and the necessity was for the first time seen of giving them more protection than was given them by the common law and the law as administered by courts of equity. Hence the passage in all our States and in England in a comparatively recent time of recording acts for the protection of purchasers and creditors. The common law and the law as administered by courts of equity afforded both these classes all the protection, which they needed two hundred years ago; and there was then no legislation for their protection. Such legislation is all modern.

The results I have reached were reached by the Court of Appeals of Virginia in a number of cases similar to the one before us. See *Floyd's trustee* v. *Harding*, 28 Gratt. 401; *Hicks* v. *Riddick*, 28 Gratt. 418; *Shipe, Cloud & Co.* v. *Repass et al.*, 28 Gratt. 716; *Barkholder* v. *Ludlam*, 30 Gratt. 255; *Young et al.* v. *Devries et al.*, 31 Gratt. 304.

Brother Johnson in his opinion points out what he deems the gross absurdity of our statute-law, if interpreted to render void as to creditors a written contract unrecorded, and to regard as valid against creditors a parol contract so far executed as that its specific performance would be enforced. It must be admitted, that our

law is not such as to commend itself to my mind as just and reasonable, and because of this I have felt every disposition to place on it the construction, which brother Johnson puts upon it. But I have been unable to place such a construction upon it. To do so would be to legislate. "It is not for the court to say, where the language of the statute is clear, that it shall be so construed as to embrace all cases because no good reason can be assigned why they were excluded from its provisions." Justice McLean's opinion in *Denn* v. *Reid*, 10 Pet. 524. In all other respects I concur in the opinion of brother Johnson. The decree of the circuit court of Greenbrier county of June 15, 1878, should in my opinion be affirmed, and the appellees should recover of the appellant their costs in this court expended and $30.00 damages.

JUDGES HAYMOND AND MOORE, CONCURRED WITH JUDGE GREEN.

DECREE AFFIRMED.