Churchill v. Morse.

## CHURCHILL v. MORSE *et al.*

1. Judgment lien: WHAT IT ATTACHES TO. A judgment lien attaches only to the actual interest of the judgment debtor in the land. If he has no interest there is nothing upon which the lien can operate, though he may seem to have from the assignment to him of a contract on file, which in fact he had transferred to another before the rendition of the judgment.

2. Judicial sale: UNRECORDED CONTRACT: SCHOOL LANDS. While section 1050, of the Code of 1851, recognized the. assignability of contracts for the sale of school lands, it did not require the *assignment* to be filed or recorded in the office of the commissioner, nor make such recording constructive notice to third parties of the assignment. It is accordingly *held*, that the failure to thus file and record the assignment of such a contract, could not prejudice the rights of the assignee, or favor those of a purchaser at execution sale under a judgment against the assignor rendered subsequent to the assignment.

3. —— PURCHASER OF A MERE EQUITY. It seems that the rule, that the purchaser of the legal title of the judgment debtor, at execution sale, takes the land discharged from all equities of third persons therein, of which he had no notice, does not apply to a case where the judgment debtor has only an equity in the land, and the purchaser purchases with full knowledge that he is acquiring thereby only such equity as the debtor has.

4. —— PRINCIPLE APPLIED : MAXIM. It was accordingly *held*, where a debtor holding, by assignment, a contract for the purchase of real estate, assigned the same to a third person, prior to a judgment afterward rendered against himself, that a purchaser at an execution sale under such judgment, of the debtor's interest in the land, took nothing by his purchase as against such assignee, though at the time thereof he had no notice of the assignment. The equities of both parties being equal, the maxim "*qui prior est tempore, portior est jure,*" prevails.

5. —— CONSTRUCTIVE NOTICE OF SHERIFF'S SALE. It was also held that the rights of an assignee, to whom such contract was again assigned after such execution sale, were entitled to additional protection, on the ground, that he purchased the contract and received an assignment thereof, more than a year and twenty days after the execution sale, and before a deed had been executed to the purchaser.

*Appeal from Jasper District Court.*

WEDNESDAY, JULY 31.

SUIT in equity to compel the issuance by the defendant Davis, as clerk, etc., of a certificate of purchase of certain school lands to the plaintiff, and to quiet his title thereto as against the other defendants. The cause was tried upon an agreed statement of facts, of which the following is the substance: April 20, 1854, the defendant, Augustus M. Morse, purchased the land in controversy, of the school fund commissioner of Jasper county; he paid one fourth the purchase-money down, gave his notes for the balance, and took a bond or contract for the conveyance of the land to him or his assigns, upon the payment of the notes. This contract was executed in duplicate, one was delivered to Morse, and the other was filed and recorded in the office of said commissioner. April 3, 1855, the defendant Morse sold and assigned said contract, to the defendant Thomas M. Sloan; this assignment was also on the copy of the contract left in the school fund commissioner's office; the plaintiff never saw the duplicate taken by Morse, until this suit was brought. March 13, 1857, the defendant Sloan sold and assigned said contract, so far as the land in controversy in this suit is concerned, to the defendant Edward Fitch. July 20, 1857, Churchill, Walkley and Johnson, of which firm plaintiff was a member, recovered a judgment against the defendant, Thomas M. Sloan. July 30, 1859, execution

Churchill v. Morse.

having been theretofore issued upon said judgment, and levied upon the land in controversy as the property of the defendant Sloan, the same was sold thereunder to the plaintiffs in said judgment and execution. August 11, 1861, the defendant Fitch sold and assigned said contract, as above, to the defendant David S. Penfield. March 4, 1862, Churchill, Walkley and Johnson, having assigned the sheriff's certificate of sale to the plaintiff Churchill, he obtained a sheriff's deed therefor, and had it recorded the same day.

Afterward, and before the commencement of this suit, both the plaintiff and the defendant Penfield tendered to the defendant Davis, as clerk of the District Court of Jasper county, the proper amount for the payment of the notes given for the land, and demanded a certificate of purchase, which he refused. The plaintiff made his tender and demand, a short time before Penfield did. Upon these facts, the District Court found for the defendants, holding that Penfield had the better equity; and dismissed plaintiff's petition, and he appeals.

*Winslow & Lindley* for the appellant.

*Seevers & Williams* for the appellees.

COLE, J.— It will be seen by reference to the facts as stated above, that Sloan had assigned his interest in the 1. JUDGMENT contract *before* the judgment, under which LIEN: what it attaches to. plaintiff claims, was recovered. At the date of the judgment then, Sloan had no interest, upon which the judgment could operate as a lien. For a judgment is a lien only on the interest of the judgment debtor. *Norton, Jewett & Busby* v. *Williams*, 9 Iowa, 528; *Bell* v. *Evans*, 10 Id. 354; *Jones* v. *Jones et al.*, 13 Id. 276; *Blaney* v. *Hanks*, 14 Id. 400; *Parker* v. *Pierce*,

16 Id. 227; *Seevers* v. *Delashmutt*, 11 Id. 174; *Welton* v. *Tizzard*, 15 Id. 495; *Hays* v. *Thode*, 18 Id. 52.

But the further question arises in the case upon the fact that the assignment of the contract of purchase by Morse to Sloan, was made upon the contract filed and recorded in the office of the school fund commissioner, and no assignment by Sloan to any other person was made on that contract.

2. JUDICIAL SALE: unrecorded contract: school lands.

The statute then in force, provided, that when the sale of school lands was made upon a partial credit, the contract should be reduced to writing, signed by the parties, and filed and recorded in the office of said commissioner. It also provided that it should be lawful for such purchaser *or his assignee,* at any time to pay the amount due on the contract, and receive a certificate of purchase. Code of 1851, § 1050. The *statute recognized* the assignability of such contracts, by giving to the assignee the same rights thereunder, as were given to the purchaser himself. And it does not provide for, or require the *assignment* to be filed or recorded in the office of the commissioner; nor does it make the recording of the contract there, any notice to third persons, of the rights of parties therein. But the idea of notice to third parties, from such recording, is very directly negatived by the subsequent sections of the same Code of 1851. See § 1211 *et seq.*, Revision of 1860; § 2220 *et seq.* We conclude, therefore, that the fact of the assignment *to* Sloan, being upon the contract filed in the office of the commissioner, while there is none *from* him, also filed there, does not change or affect the rights of the parties in this case.

The questions as to the rights of a purchaser of the legal title of a judgment debtor upon execution sale, and whether such purchaser takes the same discharged of equities of third parties thereto,

3. —— purchaser of mere equity.

of which he had no notice, are not involved, and do not arise in this case. The plaintiff purchased with a full knowledge that he was acquiring thereby, not the legal title, but only an equity; and of course, such equity as Sloan had in the property, and upon which the judgment was à lien. Having purchased Sloan's rights, he comes into a court of equity to obtain the legal title. And here he seeks the legal title as against a defendant who has also purchased Sloan's rights in good faith and for a valuable consideration paid. So far, then, the parties stand upon equal equity. But the defendant purchased Sloan's rights and paid therefor *before* the defendant did. Such being the case, it is a maxim of equity that where the equities are in other respects equal, *qui prior est tempore, prior est jure,* who is first in time, is first in right, or as it is liberally translated, " he has the better title who was first in point of time." 1 Story's Eq. Jur. § 64 (d); Broom's Legal Maxims, 329.

Where a purchaser acquires the legal title as well as an equal equity, he is then protected and fortified against the equal equity of his adverse claimant. 1 Story's Eq. Jur. § 64 and 64 (c).

The equities of the defendant, Penfield, in this case, are of such a character that they are entitled to protection in a court of equity. See *Parker* v. *Pierce,* 16 Iowa, 227; *Vannice* v. *Bergen,* 16 Id. 555; *Bartle* v. *Wallace,* 21 Id.; *Lathrop* v. *Brown,* present term. The case of *The Bank, etc.,* v. *Anderson,* 14 Iowa, 544, cited by appellant's counsel, was different from this, in that the legal title was by the records of the county, in the mortgagor, at the date of the mortgage, under a foreclosure of which the defendant claimed.

The doctrine of *estoppel,* as well as that in relation to *diligence,* are alike correctly stated by the appellant's counsel; but, in our view, the facts do not afford a basis

for the application of either doctrine as claimed in this case.

A reference to the statement of facts will show, that not only had Sloan assigned the contract before the 5.——— construc- rendition of the judgment under which plaint-tive notice of sheriff's sale. iff claims, but it will also be seen that the defendant Penfield purchased the contract more than a year and twenty days *after* the execution sale, and *before* the plaintiff procured his sheriff's deed to the property. Our statute provides (Rev. § 3355): "The purchaser of real estate, at a sale on execution, need not place any evidence of his purchase upon record until twenty days after the expiration of the full time of redemption. Up to that time the publicity of the proceedings is constructive notice of the rights of the purchaser, *but no longer.*" At the sale under execution, the sheriff gave to the purchaser a certificate of sale, and the *right of redemption* existed for one year; so that the proceedings were notice for one year and twenty days from the sale.

The defendant Penfield acquired his rights, by purchase of the contract, two years and twelve days after the execution sale, and seven months and twenty-four days before the sheriff's deed was made to the plaintiff. Upon the basis then of constructive notice, even if the assignment in the office of the school fund commissioner was such, the defendant Penfield acquired his rights without constructive notice even of the plaintiff's rights, and would be entitled to protection as against plaintiff's title. In either view of the questions made in the case, the judgment of the District Court must be

Affirmed.