# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 01-1237SI

————————

| | |
|---|---|
| North Grand Mall Associates, LLC, a Delaware limited liability company, | * * * |
| Appellant, | * On Appeal from the United |
| | * States District Court |
| v. | * for the Southern District |
| | * of Iowa. |
| Grand Center, Ltd., an Iowa limited partnership, | * * * |
| Appellee. | * |

————————

Submitted: November 14, 2001

Filed: January 30, 2002

————————

Before BYE, RICHARD S. ARNOLD, and RILEY, Circuit Judges.

————————

RICHARD S. ARNOLD, Circuit Judge.

This case is about the interpretation of a lease. The plaintiff in the case, North Grand Mall Associates, LLC, is the lessee (actually a successor in interest to the original lessee). The defendant, Grand Center, Ltd., is the lessor. The lease, originally signed in 1968, is for 99 years. The issue in the case has to do with Article XXVII, which sets out the terms of an option to purchase granted to the lessee. North Grand Mall has exercised the option. There is no question about its right to do so. The controversy, rather, has to do with the proper method of computing the option price.

Article XXVII sets out a certain method of computing the price. After a bench trial, the District Court held that this Article, as originally drafted, was the result of a mutual mistake, and that actually the parties intended a different method of price computation, one that would yield a higher price. This was the position taken by Grand Center, the lessor. North Grand Mall asserted that it had acquired the lease from a previous lessee for value and in good faith, that it had neither knowledge nor notice of any alleged mutual mistake, and that, accordingly, it was entitled to rely on and be governed by Article XXVII as originally drafted. The District Court rejected this position. It held that North Grand Mall knew facts sufficient to put it on inquiry, and that, if reasonable inquiry had been made, North Grand Mall would have discovered the mutual mistake and would have known the true intention behind Article XXVII. Accordingly, the District Court reformed this portion of the lease, declared the rights of the parties accordingly, and fixed the option price at the higher level contended for by the lessor.

The District Court found that North Grand Mall knew two important facts: first, that Article XXVII as originally drafted was ambiguous, and second, that a custom in the real-estate business required that, when the income capitalization method is used to compute a price, the time period most recent before the date of the exercise of an option be selected for the determination of relevant income figures. Article XXVII appeared to conflict with this custom. North Grand Mall, in the view of the District Court, ought to have made inquiry, discovered the custom, and realized that the ambiguity in Article XXVII was a drafting error that should have been reformed to reflect the original intention of the parties, an intention consistent with the position now taken by Grand Center.

For reasons we shall explain in this opinion, we respectfully disagree with this approach. In our view, the language of Article XXVII was not ambiguous. We accept the District Court's finding of custom, but a custom, however well established, cannot prevail against the unambiguous words of an express contract. We therefore

reverse the judgment of the District Court and remand for entry of a new judgment consistent with this opinion.

I.

Article XXVII as originally drafted, and as still extant at the time North Grand Mall became lessee, provides in relevant part as follows:

> OPTION TO PURCHASE:
>
> An option is hereby granted to the Lessee to purchase the real estate which is the subject matter of this Lease together with all improvements located thereon at any time after June 1, 1993, and prior to the termination of this lease, at a price computed as follows:
>
> The average sum of the Minimum Rent and Percentage Rent paid to Lessor for the three Lease Years immediately preceding the year in which Lessee notifies Lessor of its election to exercise the option shall be divided by seven percent (7%) and the resulting dividend shall constitute the purchase price to be paid.
>
> Example:  Option exercised in May, 2010.

| Lease Year Ending | Minimum Rent | Percentage Rent | Total |
|---|---|---|---|
| 1-31-2009 | $24,000 | $10,000 | $ 34,000 |
| 1-31-2008 | 24,000 | 11,000 | 35,000 |
| 1-31-2007 | 24,000 | 12,000 | 36,000 |
| | | | _____ |
| 3 year total | | | $105,000 |
| Average | | | $ 35,000 |
| Divided by 7% | | | .07 |
| Purchase Price | | | $500,000 |

*    *    *    *    *

XXXIII

> The term 'Lease Year' as used herein shall mean the twelve (12) calendar month period beginning on the first day of February and ending on the last day of the following January.

North Grand Mall purchased its leasehold interest in June of 1998. At that time, the lease had 69 years to run. North Grand Mall paid the previous tenant about 20 million dollars. Some two months later, in August, North Grand Mall exercised its option to purchase the fee-simple title under Article XXVII. It computed what it thought to be the appropriate purchase price in accordance with the example in Article XXVII which we have just quoted. In other words, North Grand Mall computed the appropriate income figures using the following lease years: the year ending January 31, 1997, the year ending January 31, 1996, and the year ending January 31, 1995. Grand Center took the position that a different set of years should be used: the year ending January 31, 1998, the year ending January 31, 1997, and the year ending January 31, 1996. Under Grand Center's computation, the purchase price would be $129,400 greater. This amount has been placed in escrow pending determination of the current lawsuit. The option has been exercised, and North Grand Mall has now acquired the fee simple. The question remaining to be decided is who gets the amount placed in escrow.

Grand Center, the lessor and defendant in this declaratory-judgment action, argues that Article XXVII is ambiguous, and that any prudent successor lessee would have known this. Defendant points out that Article XXVII, on its face, provides for the computation of the price by the income-capitalization method. That is, it prescribes that the income of the property for a certain three-year period should be

-4-

averaged, and that the resulting amount should be capitalized at the rate of 7%. This much is clear on the face of the contested provision. But, according to the defendant, the words "year" and "Lease Years" create an ambiguity. It is conceded that the "year" in which the option was exercised was the calendar year 1998. According to Grand Center, however, this word should have been written as "Lease Year," in which case it would have referred to the period February 1, 1998, through January 31, 1999. In that event, "the Three Lease Years immediately preceding" would be the yearly periods ending January 31, 1998, January 31, 1997, and January 31, 1996. As it happens, the average income for these three periods was higher than the average income for the corresponding periods ending in 1997, 1996, and 1995.

Grand Center further asserts, and there is testimony in the record to support the proposition, that business people using the income-capitalization method would normally pick the most recently concluded relevant periods as the basis for their computation. To do otherwise, defendant argues, makes no sense. It attributes to the parties an intention to make their bargain on the basis of obsolete information. In addition, there was testimony, which the District Court accepted, that the parties who originally drafted the lease intended to use the most recently concluded Lease Years. That is, according to this testimony, the example given in Article XXVII, instead of using the lease years ending January 31, 2009, 2008, and 2007, should have used the lease years ending January 31, 2010, 2009, and 2008.

We accept the District Court's findings of fact, that such a custom as contended for by defendant existed, and that the original parties to the lease intended to observe it. The difficulty is that North Grand Mall, successor lessee, knew nothing about any of this, and was therefore a bona fide purchaser (BFP) of the leasehold interest, taking the interest free of any undisclosed equities. The District Court assumed that the BFP doctrine would apply to purchases of leasehold interests, and found that North Grand Mall had no actual notice of the alleged mistakes until after it had exercised its option to purchase. The Court held, however, that the ambiguity in Article XXVII, coupled

with defendant's evidence of custom in the real-estate business, was sufficient to put North Grand Mall on inquiry notice.  It ought to have known, the Court held, what Article XXVII really meant.  Therefore, it was equitable to reform the language of the article and conclude that the higher number was the proper purchase price.

We have a number of difficulties with this conclusion.  In the first place, we see no ambiguity in Article XXVII as drafted.  Conceivably a reader going only as far as the second paragraph might question whether "year" could possibly mean "Lease Year."  In addition, it is certainly true that, as a general matter, one would expect an option price to be computed on the basis of the most recently available income numbers.  The answer, and to us it is conclusive, is that the example of computation actually given in Article XXVII eliminates any ambiguity or chance for misunderstanding.  In the example, the option is exercised in May 2010, a date falling within the "Lease Year" of February 1, 2010, through January 31, 2011.  The years that are to be averaged to determine the price are then given as the Lease Years ending January 31, 2009, 2008, and 2007.  There is nothing ambiguous about this. It is plain on its face.  There is no requirement in law that parties making a contract in 1968 have to do so in a way that seems, 30 years later, to make the best business sense, or even in a way that would have made the best business sense in 1968. Further, Article XXVII is not nonsensical, as the defendant would have us believe. Rational drafters could well conclude that the earlier set of three years should be selected in order to make sure that, as of the date of the exercise of the option, income figures could be properly and promptly computed, without waiting for any additional data or corrections.  An option, for example, could be exercised on, say, February 1, 1998.  Under Grand Center's approach, the lease years to be used in computing the option price would be the three years ending January 31, 1998, 1997, and 1996. Rational negotiators could well have concluded that a set of years one year earlier should be selected, in order to avoid having to wait a perhaps considerable period of time before the income for the lease year ending January 31, 1998, could be ascertained.

Nor does the evidence of custom, with respect to which we accept the District Court's findings, help Grand Center. Custom is often relevant in contract cases, but it comes into the analysis as a default factor, so to speak. If the parties do not make their intention clear, or if there is some kind of gap in their agreement as manifested in writing, custom is relevant as evidence of what similarly situated parties would probably have agreed to, or did in fact agree to without saying so out loud. That is not the case here. Article XXVII as drafted covers all relevant points and is, as we have said, free of ambiguity. Evidence of custom is therefore irrelevant.

## II.

The lessor makes two additional arguments, legal ones, that deserve discussion. First, it says that the relevant time, as of which the lessee's knowledge or notice should be determined, is not the time when the leasehold interest was acquired, but rather the time when the option was exercised and the lessee thereby acquired the fee simple. We disagree. When the lessee acquired its leasehold interest in June of 1998, it also acquired all of the rights set forth in the lease, including the option to purchase. This option, whatever its terms may have been, passed at that time to the lessee along with all of its benefits and conditions. The lessee paid consideration, about 20 million dollars, as we have said, for the leasehold interest, and this interest included, as an important part of the bundle of rights adhering to it, the option to purchase. Whether the lessee had specifically in mind that it would exercise the option at the time it bought the leasehold interest, or whether it ascribed any particular portion of the purchase price to the option, is beside the point. It has a right to the benefit of all it bought.

The lessor also asserts, as a matter of law, that, in Iowa, the BFP doctrine has no application to buyers of equitable interests, as opposed to legal ones. For this proposition <u>Churchill v. Morse</u>, 23 Iowa 229 (1867), is cited. We have read and re-read the cited opinion, and it does not seem to us to stand for any such proposition.

It is true that the opinion makes the following statement:

> The plaintiff [the losing party] purchased with a full knowledge that he was acquiring thereby, not the legal title, but only an equity; and of course, such equity as Sloan [a predecessor in interest of the winning party] had in the property, and upon which [plaintiff's] . . . judgment was a lien.

Id. at 233. The point of the passage, though, is that Sloan had already conveyed his interest in the property at the time plaintiff's judgment lien attached. As the court's opinion earlier explained,

> At the date of the judgment then, Sloan had no interest, upon which the judgment could operate as a lien. For a judgment is a lien only on the interest of the judgment debtor.

Id. at 231. In fact, the opinion refers to both parties in the case as having "purchased . . . in good faith and for a valuable consideration paid," id. at 233, and resolves the issue in favor of the defendant primarily because, as already observed, the plaintiff's judgment debtor had already sold his interest in the property at the time plaintiff's judgment was obtained. The opinion goes on to say, in an alternative holding, that the plaintiff had failed to obtain legal title within a certain time fixed by statute. We simply cannot derive from Churchill the proposition for which lessor now cites it.

It also contended that the BFP doctrine applies only to purchases of fee-simple title, not to purchasers of lesser interests. The argument has neither logic nor authority on its side. A leasehold interest is a recognized estate in land, and the option to purchase was an incident of this interest, a covenant running with the land, good against the lessor and any successor in interest of the lessor. The principle that a BFP takes free of prior equities of which he has no knowledge or notice is a general

one, designed to encourage the marketability of property. There is no reason why it should not include sales of leasehold interests, including, perhaps, especially a leasehold for 99 years, which is, as a practical matter, close to a fee-simple estate, especially when it is joined with an option to purchase. Indeed, the Iowa Supreme Court has applied the BFP analysis to a leasehold interest. See <u>Baron v. Crossroads Center of Iowa, Inc.</u>, 165 N.W. 2d 745, 753-54 (Iowa 1969). The opinion recognizes the "innocent lessee in good faith" defense, though it ultimately, for other reasons, holds against the purported BFP. See also <u>Raub v. General Income Sponsors of Iowa, Inc.</u>, 176 N.W.2d 216 (Iowa 1970), in which the purchaser of a mortgage, an interest lesser than the fee simple (also, incidentally, often categorized as an equitable interest) was held entitled to the benefit of the BFP doctrine.

*    *    *    *    *

For the reasons given, the judgment of the District Court is reversed, and the cause remanded to that court for entry of a judgment consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.